**EXHIBIT A**



## IN THE DISTRICT COURT OF LANCASTER COUNTY, NEBRASKA

| | | |
|---|---|---|
| LINCOLN INVESTORS, A LIMITED LIABILITY COMPANY, | ) ) ) | Case No. CI14-*1663* |
| Plaintiff, | ) ) | |
| v. | ) ) | COMPLAINT |
| | ) ) | |
| BEST BUY STORES, L.P., a Virginia Limited Partnership, AND BEST BUY CO., INC., a Minnesota Corporation, | ) ) ) ) | |
| Defendants. | ) ) | |

COMES NOW the Plaintiff, Lincoln Investors, a Limited Liability Company, by and through its attorney of record, James A. Cada, for their cause of action against the Defendants, alleges and avers as follows:

### GENERAL ALLEGATIONS AND CAUSES OF ACTION:

1.     That Plaintiff, Lincoln Investors, a Limited Liability Company, (hereinafter "Lincoln Investors"), is a limited liability company duly organized and existing under and by virtue of the laws of the State of Nebraska and/or authorized to do business in the state of Nebraska, and is the owner of the property located at 400 48th and "R" Streets, Centro Plaza Shopping Center, Lincoln, Lancaster County, Nebraska, 68504-6850 (hereinafter "the Property").

2.     That at all times relevant herein, Defendants, Best Buy Stores, L.P., a Virginia Limited Partnership, and Best Buy Co., Inc., a Minnesota Corporation (hereinafter collectively "Best Buy"), were conducting business in Lincoln, Lancaster County, Nebraska.

3.     That on or around June 30, 1994, Best Buy signed and entered into a written Lease Agreement covering the aforementioned Property that is the subject of this action. A copy of said Lease Agreement is attached hereto and incorporated herein by reference as Exhibit A.

4.     That Best Buy has materially breached said Lease Agreement by failing and refusing to pay rent, utilities, insurance, common area maintenance fees, and property taxes due and owing to the Plaintiff under the terms of the Lease Agreement, and failed to surrender the premises upon termination of the Lease in the same or substantially the same condition as when Defendant took possession of the Property.





001404323D02

**EXHIBIT A**

## FIRST CAUSE OF ACTION:
### BREACH OF CONTRACT

5.      Plaintiff restates and incorporates each and every allegation set forth in paragraphs 1 – 4 herein.

6.      That the term of the lease, as provided in Articles 3 and 4 of the Lease Agreement, was to be fifteen (15) years, with tenant's option for three (3) additional periods of five (5) years each. That having exercised its option to extend the Lease Agreement for one five year period, the Lease Agreement expired in January of 2014, and thereafter, Best Buy was a holdover tenant as defined in the Lease Agreement. That Best Buy continued to be a holdover tenant until its surrender of the premises in April 2014.

7.      That Article 15 of the above referenced Lease Agreement provides that Best Buy, as a holdover tenant without the consent of the landlord, was to pay month-to-month rent at one hundred fifty percent (150%) of the immediately succeeding fixed monthly rental rate plus its share of all other applicable charges. That Best Buy continued to occupy the Property without Landlord's permission from January to April 2014, and that pursuant to said Lease provisions, Best Buy was to pay $86,125.05 per month from January through April.

8.      That Defendant has failed and refused to pay such rent for the months of February, March, and April, and therefore, owes Plaintiff $258,375.15 in unpaid rent.

9.      That Article 9 of the aforementioned Lease Agreement provides that tenant shall pay all utility bills including electricity, gas, water, sewer and garbage removal.

10.     That Defendant has failed and refused to pay gas and electric bills for the months of February through April in the amounts of $11,574.05 and $3,627.81 respectively, and therefore owes Plaintiff $15,201.86 for the same.

11.     That Article 22 of the aforementioned Lease Agreement required that Best Buy purchase and maintain liability insurance for the Property.

12.     That Best Buy has failed and refused to purchase insurance for the months of February through April, 2014, and therefore owes Plaintiff $3,236.80 for the same.

13.     That Article 25 of the aforementioned Lease Agreement requires that Best Buy pay all real estate taxes and all installments of assessments payable with respect to the Property during the Lease term.

14.     That Best Buy has failed and refused to pay property taxes for all of year 2013, and the months of January through April of year 2014, and therefore owes Plaintiff $95,921.48 for the same.

15.     That Article 27 of the aforementioned Lease Agreement required Best Buy to reimburse Landlord a pro rata portion of all common area maintenance expenses.

**EXHIBIT A**

16.    That Best Buy has failed and refused to pay said common area maintenance fees, and therefore, owes Plaintiff $13,007.45 for the same.

17.    That Article 14 of the aforementioned Lease Agreement requires that Tenant, upon expiration of the Lease Term, surrender the premises in the same or substantially the same condition as when Tenant took possession of the Property.

18.    That upon surrender of the Property, extensive damages throughout the property evidence a material breach on the part of Best Buy, necessitating repairs and restoration expenses on the part of the Plaintiff in the amount of $314,284.30. That because Defendant's breach necessitated said expenses, Defendant owes the Plaintiff for the same.

19.    That Section 32 of the above referenced Lease Agreement, entitled "ATTORNEY'S FEES" provides, in part, as follows: "In the event Tenant or Landlord defaults in the performance of any of the terms, covenants, agreements or conditions contained in this Lease and the other party places in the hands of an attorney the enforcement of all or any part of this Lease, the defaulting party agrees to pay the other party's reasonable attorneys' fees for the services of the attorney following a final or non-appealable determination of the issues."

20.    That Best Buy, as Tenant, defaulted in the performance of multiple terms, covenants, agreements and conditions provided in the Lease, and that Lincoln Investors placed in the hands of its attorney of record enforcement of said Lease. That as such, Best Buy has defaulted on its obligations and is responsible to pay Lincoln Investor's reasonable attorneys' fees for such enforcement.

WHEREFORE, Plaintiff prays for damages in the amount of $700,027.04. Said amount to include, but not be limited to, the cost of restoration and repairs to the premises due to Defendant's breach, unpaid rent, utilities, insurance, common area maintenance fees, property taxes, plus attorneys fees pursuant to Article 32 of the Lease Agreement and when provided for by law, costs of this action, and for such further relief as the Court may deem appropriate.

Dated this 12 day of May, 2014.

LINCOLN INVESTORS, a Limited Liability Company, Plaintiff

By: _____

James A. Cada #10553
Edward F. Hoffman #21897
Attorneys for Plaintiff
1024 K Street
Lincoln, Nebraska 68508
402-477-2233

**EXHIBIT A**

## IN THE DISTRICT COURT OF LANCASTER COUNTY, NEBRASKA

| | | |
|---|---|---|
| LINCOLN INVESTORS, a Limited, | ) | Case No. CI14-_____ |
| Liability Company, | ) | |
| | ) | |
|     Plaintiff, | ) | |
| v. | ) | |
| | ) | PRAECIPE |
| | ) | |
| BEST BUY STORES, L.P., a Virginia | ) | |
| Limited Partnership, AND BEST BUY CO., | ) | |
| INC., a Minnesota Corporation, | ) | |
| | ) | |
|     Defendants. | ) | |
| | ) | |

TO THE CLERK OF SAID COURT:   Please issue summons for delivery to Constable Greiner for *personal/residential service* upon the Defendants, as follows:

    Best Buy Stores, L.P.
    Registered Agent: CT Corporation System Inc.
    5601 South 59th Street
    Lincoln, NE 68516

    Best Buy Co., Inc.
    Registered Agent: CT Corporation System Inc.
    100 S, 5th Street #1075
    Minneapolis, MN 55402

                                        _____
                           James A. Cada #10553



Store No. _____
Lease Type: SC

LEASE

by and between

Plaza Sixty, Inc., a Wisconsin corporation

("Landlord")

and

Best Buy Co., Inc., a Minnesota corporation

("Tenant")

for improved real property at

48th and "R" Street,
Centro Plaza Shopping Center,
Lincoln, Nebraska

EXHIBIT
|

**TABLE OF CONTENTS**

| ARTICLES | PAGE |
|---|---|
| I. FUNDAMENTAL LEASE TERMS | 1 |
| 1. THE PREMISES | 3 |
| 2. TITLE AND QUIET POSSESSION | 3 |
| 3. LEASE TERM | 3 |
| 4. OPTION TO EXTEND | 4 |
| 5. COMPLETION AND DELIVERY OF THE PREMISES AND SHOPPING CENTER | 4 |
| 6. RIGHT OF PRIOR INSTALLATION | 4 |
| 7. RENT | 5 |
| 8. CONFORMITY WITH LAW | 5 |
| 9. UTILITIES | 5 |
| 10. REPAIR OF THE PREMISES | 5 |
| 11. ACCESS BY LANDLORD | 6 |
| 12. TENANT'S FIXTURES AND SIGNS | 6 |
| 13. ALTERATIONS TO THE PREMISES | 7 |
| 14. SURRENDER OF THE PREMISES | 7 |
| 15. HOLDING OVER; RIGHT OF FIRST REFUSAL | 7 |
| 16. LANDLORD'S REMEDIES UPON DEFAULT | 8 |
| 17. NONWAIVER OF DEFAULT | 9 |
| 18. QUIET ENJOYMENT | 9 |
| 19. DAMAGE OR DESTRUCTION | 9 |
| 20. WAIVER OF SUBROGATION | 10 |
| 21. CONDEMNATION AND EMINENT DOMAIN | 11 |
| 22. INSURANCE | 11 |
| 23. SUBORDINATION OF LEASE | 12 |

i

24.  TRANSFER OF INTEREST . . . . . . . . . . . . . . . .  12

25.  REAL ESTATE TAXES  . . . . . . . . . . . . . . . . .  13

26.  RIGHT OF PROTEST . . . . . . . . . . . .  . . . . . .  14

27.  COMMON AREAS . . . . . . . . . . . . . . . . . . . .  15

28.  OBSTRUCTIONS . . . . . . . . . . . . . . . . . . . .  15

29.  RIGHT OF FIRST REFUSAL ON ADJOINING SPACE  . . . . .  15

30.  EXCLUSIVITY AND USE  . . . . . . . . . . . . . . . .  16

31.  HAZARDOUS SUBSTANCES . . . . . . . . . . . . . . . .  16

32.  ATTORNEY'S FEES  . . . . . . . . . . . . . . . . . .  17

33.  BROKERAGE  . . . . . . . . . . . . . . . . . . . . .  17

34.  NOTICES  . . . . . . . . . . . . . . . . . . . . . .  18

35.  MISCELLANEOUS  . . . . . . . . . . . . . . . . . . .  18

II.  EXHIBITS . . . . . . . . . . . . . . . . . . . . . .  19

EXHIBITS

    A.    LEGAL DESCRIPTION OF SHOPPING CENTER
    B.    SITE PLAN
    C.    PERMITTED TITLE EXCEPTIONS (TITLE COMMITMENT/POLICY)
    D.    STORE FLOOR PLANS, CONSTRUCTION PLANS AND SPECIFICATIONS
          AND STOREFRONT, SIGNAGE AND PYLON SIGN

**EXHIBIT A**

Store No. _____

### L E A S E

THIS LEASE is made and entered into as of the _____ day of June, 1994, by and between PLAZA SIXTY, INC., a Wisconsin corporation ("Landlord") and BEST BUY CO., INC., a Minnesota corporation ("Tenant").

### WITNESSETH:

In consideration of the rents reserved and the covenants and conditions set forth herein, Landlord and Tenant agree as follows:

I.   **FUNDAMENTAL LEASE TERMS.**

    A.   Parties.

        Landlord: Plaza Sixty, Inc.
        Tenant:   Best Buy Co., Inc.

    B.   Premises (Article 1).

        Approximately forty-five thousand three hundred thirty (45,330) square feet formerly occupied by Nash Finch and fourteen thousand nine hundred fifty-one (14,951) square feet of contiguous space for a total of sixty thousand two hundred eighty-one (60,281) square feet located at 48th and "R" Street, Centro Plaza Shopping Center, Lincoln, Nebraska.

    C.   Term (Articles 3 and 4).

        Fifteen (15) Lease Years, with three (3) five (5) year renewals.

    D.   Fixed Rent (Article 7).

| Lease Yr. | Monthly | Annual | Per sq. ft. |
|-----------|---------|--------|-------------|
| 1[1]-5 | $38,629.43 | $463,553.20 | $ 7.69 |

---

[1]   Notwithstanding the above, Tenant shall pay to Landlord as rent on the Possession Date or August 10, 1994, whichever is later, the following amounts:

    a.   One Hundred Fourteen Thousand Nine Hundred Seventy-six and 19/100 Dollars ($114,976.19) for sixteen (16) months prepaid fixed base rent for the fourteen thousand nine hundred fifty (14,950) square feet of space; and

**EXHIBIT A**

|  |  |  |  |
|--------|-----------|------------|-------|
| 6-10   | 43,803.46 | 525,641.60 | 8.72  |
| 11-15  | 50,283.56 | 603,402.80 | 10.01 |
| Opt. 1 | 57,416.70 | 689,000.40 | 11.43 |
| Opt. 2 | 65,654.96 | 787,859.60 | 13.07 |
| Opt. 3 | 70,075.50 | 840,906.00 | 13.95 |

E.  Construction (Article 5).

Landlord or current tenant to deliver possession on or before thirty (30) days after full execution of this Lease, but no later than August 10, 1994.

F.  Addresses (Article 34).

(i)  If to Landlord:

Plaza Sixty, Inc.
c/o National Management, Inc.
1818 North Farwell Avenue
Milwaukee, WI 53202

(ii) If to Tenant:

Best Buy Co., Inc.
7075 Flying Cloud Drive
Eden Prairie, MN 55344
Attention:  Legal Department - Real Estate

with a copy to:

Robins, Kaplan, Miller & Ciresi
2800 LaSalle Plaza
800 LaSalle Avenue South
Minneapolis, MN 55402-2015
Attention:  Steven A. Schumeister, Esq.

---

b.  Two Hundred Seventeen Thousand Two Hundred Eighty-one and 84/100 Dollars ($217,281.84).

Therefore the fixed monthly rent exclusive of monthly tax, insurance and common area maintenance charges for the following months shall be as follows:

| Lease Yr. | Lease Months | Monthly |
|-----------|--------------|-------------|
| 1         | 1-8          | $29,048.98  |
| 1 and first part of 2 | 9-16 | 29,048.98 |

2

**EXHIBIT A**

1.   **THE PREMISES.**

Subject to the terms and conditions of this Lease, Landlord leases
to Tenant and Tenant rents from Landlord the premises situated in
the City of Lincoln, County of Lancaster and State of Nebraska, and
known and described as follows:

> The premises and improvements and appurtenances
> constructed (the "Premises") located in the Centro Plaza
> Shopping Center (the "Shopping Center").   The legal
> description of the Shopping Center is attached hereto as
> Exhibit A and made a part hereof, and the Shopping Center
> is outlined in red on the site plan attached hereto as
> Exhibit B and made a part hereof, provided that in the
> event of any conflict between Exhibit A and Exhibit B,
> Exhibit B shall control.   The Premises contain
> approximately forty-five thousand three hundred thirty
> (45,330) square feet formerly occupied by Nash Finch and
> fourteen thousand nine hundred fifty (14,950) square feet
> of contiguous space for a total of sixty thousand two
> hundred eighty square feet (60,280) of building area and
> are cross-hatched on the site plan attached as Exhibit B.

2.   **TITLE AND QUIET POSSESSION.**

Landlord hereby warrants that it has full right and authority to
enter into this Lease in accordance with the terms hereof and that
it has good title in fee simple to the Premises free and clear of
all liens and encumbrances except as stated in a current title
search, commitment or policy issued from a national title company
attached hereto as Exhibit C and made a part hereof (the "Permitted
Exceptions").    Landlord further warrants that the Permitted
Exceptions do not contravene, hinder or impair any right or
privilege granted Tenant in this Lease. If so requested by Tenant,
and at Tenant's sole cost, from time to time during the term of
this Lease, Landlord shall furnish Tenant with evidence of
Landlord's title to the Premises.  Such title may be evidenced by
a copy of a policy of title insurance issued by a title insurance
company licensed to do business in the state in which the Premises
are located, which policy shall contain no exceptions to Landlord's
interest in the Premises other than Permitted Exceptions. Landlord
shall indemnify, defend and hold Tenant harmless from all loss,
damage or claims resulting from any breach of this representation
or warranty.

3.   **LEASE TERM.**

The term of this Lease (the "Lease Term") shall be for a period of
fifteen (15) "Lease Years," as that term is hereinafter defined.
The term shall commence on the date (the "Commencement Date") which
is the Possession Date, as that term is hereinafter defined.   The
term shall expire on the last day of the fifteenth (15th)

3

consecutive "Lease Year," unless sooner terminated or extended as provided herein.

The term "Lease Year" as used herein shall mean a period of twelve (12) consecutive full calendar months (except for the first Lease Year, which may be shorter). The first Lease Year shall commence on the Commencement Date. The first Lease Year shall expire at midnight on the first January 31 following the Commencement Date. Succeeding Lease Years shall each commence on the first (1st) day following the end of the preceding Lease Year. After the Commencement Date and within ten (10) days after request from the other party, each party shall execute and deliver to the other a supplemental agreement stipulating the Commencement Date.

### 4. OPTION TO EXTEND.

Tenant is hereby given the right to extend the Lease Term for three (3) additional period(s) of five (5) year(s) per period, upon the same terms and conditions as provided in the original term of this Lease. Tenant shall exercise the right granted in the foregoing sentence by notifying Landlord in writing of its intention to extend at least one hundred eighty (180) days prior to the date of commencement of each such extension term, and thereupon this Lease shall be so extended without any further document or act.

### 5. COMPLETION AND DELIVERY OF THE PREMISES AND SHOPPING CENTER.

Landlord agrees to complete the following work (collectively, "Landlord's Work") on or before thirty (30) days after full execution of this Lease, but not later than August 10, 1994 ("Possession Date"), deliver the Premises free and clear of any and all (i) liens and encumbrances, except for Permitted Exceptions, and (ii) violations of laws, regulations and building restrictions relating to the Premises from the Possession Date. Subject to conditions set forth in this Article, Tenant takes the Premises in an "as is" condition.

Landlord hereby warrants and represents that at such time as it delivers possession of the Premises to Tenant, the structure, roof and roof membrane of the Premises will be in good condition.

### 6. RIGHT OF PRIOR INSTALLATION.

At any time prior to the Commencement Date, Tenant shall have the right to enter the Premises for the purposes of measuring the Premises and installing therein Tenant's fixtures, equipment and merchandise, provided that such operations do not interfere unreasonably with Landlord. Any entry by Tenant for the purpose of measuring the Premises or of installing its fixtures and equipment shall not be deemed acceptance of the Premises by Tenant.

4

7.  **RENT.**

Tenant hereby covenants and agrees to pay Landlord as monthly fixed rent for the Premises during the Lease Term the sums set forth in Article I(D) hereof.

Such monthly fixed rent shall be payable in advance and without demand on the first day of every calendar month.  Rent shall be prorated for any partial month at the beginning or end of the Lease Term.  Tenant shall pay rent to Landlord at the address provided for Landlord in Article I(F) hereof, unless otherwise notified in writing by Landlord.

8.  **CONFORMITY WITH LAW.**

Tenant will use and occupy the Premises and appurtenances in a careful, safe and proper manner, and shall comply with the lawful requirements of the proper public authorities regarding the conduct of Tenant's business.  Tenant will not permit the Premises to be used for any unlawful purpose.

9.  **UTILITIES.**

Tenant shall, in addition to other obligations, pay all utility bills including electricity, gas, water, sewer and garbage removal incurred by it.  All utilities serving the Premises shall be separately metered.  Garbage and refuse shall be stored in and picked up at the rear of the building.  In the event any of the above enumerated utilities cannot be separately metered, Tenant agrees to pay a prorata share of the cost of those utilities not separately metered according to the formula set forth for common area charges herein.

10.  **REPAIR OF THE PREMISES.**

    **10.1.  Tenant's Obligations.**  Tenant agrees to perform, at its expense, all repair, replacement and maintenance of the Premises, including, but not by way of limitation, all interior and exterior nonstructural portions, the nonstructural portions of the roof and replacement thereof, nonstructural portions of walls, floor and ceiling, ceiling, electrical services, plumbing, sewer in the Leased Premises, painting, redecorating, heating and air-conditioning plant and equipment.

    **10.2.  Landlord's Obligations.**  Landlord shall make all repairs and replacements to the foundation and structure of the Premises including structural portions of the roof, walls, floors and ceiling, whether interior or exterior, excluding roof or roof membrane which is the responsibility of Tenant. Landlord shall make all repairs to the Premises necessitated by any neglect, fault, or default of Landlord, its employees,

5

agents, or contractors.

In performing its obligations hereunder, Landlord shall not unreasonably interfere with tenant's normal business operations. If Landlord fails to perform such repairs or replacements, within a reasonable time after notice from Tenant, Tenant may make such repairs and offset the costs from rent with a five percent (5%) charge to cover administrative costs. In the event Landlord objects to the repair or cost thereof, Tenant may proceed but the offset is held in abeyance pending resolution by arbitration.

## 11. ACCESS BY LANDLORD.

Landlord shall have free access to the Premises at all reasonable times upon 24 hours' notice for the purpose of examining or making any repairs thereto which Landlord is required to make under this Lease or which are necessary for safety or maintenance purposes. In the event of an emergency, Landlord shall not be required to give Tenant 24 hours' notice, but shall use reasonable efforts to notify Tenant and its security company prior to entry.

## 12. TENANT'S FIXTURES AND SIGNS.

Tenant at its sole cost and expense may install and operate its standard interior and exterior electric and other signs, in and on the Premises, including signs on poles erected by Landlord or Tenant, machinery and any other mechanical equipment, and Tenant's standard yellow and black ticket sign tilted 15 degrees, with dimensions not less than 25'3" x 15'6", mounted on Tenant's standard storefront, as depicted on the attached Exhibit D, provided that in so doing Tenant complies with all laws and ordinances of any governmental authority with jurisdiction over the Premises. Tenant may also install and maintain in the Premises such pipes, conduits and ventilating ducts as are required or desirable for the business conducted by Tenant therein. Tenant shall at all times have the right to remove all signs, fixtures, machinery, equipment, appurtenances or other property heretofore or hereafter furnished or installed by Tenant, provided it repairs any damage caused thereby, it being expressly understood and agreed by the parties that said property shall not become part of the Premises but shall at all times be and remain the property of Tenant and as such shall not be subject to any landlord's lien or other creditor's remedy otherwise available to Landlord.

Tenant shall be entitled to install its standard pylon sign having a minimum of 200 square feet per side for Tenant's standard yellow and black tilted ticket sign as depicted on the attached Exhibit D. In the event the Shopping Center contains an existing pylon sign, Tenant shall be entitled to the top space on any and all pylon or free standing sign for or in the Shopping Center, with space on all such signs equal to the largest space afforded any other tenant or party. If the Shopping Center contains no pylon sign, Tenant may

6

construct one pylon sign in the Common Area of the Shopping Center
in a place to be designated by Tenant with Landlord's consent not
reasonably withheld or delayed.   Tenant shall have the right to
designate its colors and sign face for its panel on any pylon or
free standing sign to which Tenant is allowed space.

Tenant may place on the interior and exterior of the Premises any
sign which conforms to applicable legal requirements.  Tenant shall
have the right, at its sole cost and expense, to install its
standard yellow six foot (6') letter sets on the sides and rear of
the building as depicted on the attached Exhibit D.  To the best of
Landlord's knowledge, the applicable legal requirements do not
prohibit the construction of Tenant's signs as depicted on Exhibit
D attached hereto and made a part hereof.

### 13.   ALTERATIONS TO THE PREMISES.

At any time after delivery of the Premises to Tenant, Tenant at its
own cost and expense and without Landlord's consent may make
changes, alterations, additions and improvements to the interior of
the Premises provided it first obtains Landlord's consent (which
consent shall not be unreasonably withheld or delayed) before
making any changes to the exterior of the Premises, the common area
and the structure of the building itself.   If Tenant does not
receive written objections from Landlord within ten (10) days after
receipt by Landlord of a written request for consent, Landlord
shall be deemed to have consented to all items requested therein.
If so requested by Tenant, Landlord shall cooperate in securing
necessary permits and other government authorizations for Tenant's
changes and alterations, at no cost to Landlord, but without
representation, warranty or liability of any kind in the event such
permits or authorizations are not obtained.   At any time, Tenant
may install its prototype building or storefront without prior
consent.

### 14.   SURRENDER OF THE PREMISES.

Tenant will deliver and surrender possession of the Premises to
Landlord upon the expiration of this Lease or its earlier
termination, in condition and repair equal to the condition and
repair thereof at the commencement of said term, loss by fire,
ordinary wear and tear and decay, casualty, neglect or fault or
default of Landlord, and taking by eminent domain excepted.
Landlord expressly waives any statutory or other lien or security
interest in Tenant's property.

### 15.   HOLDING OVER; RIGHT OF FIRST REFUSAL.

If Tenant continues its occupancy of the Premises after the
expiration of the term of this Lease or any renewal or extension
thereof (or any earlier termination provided or permitted by this
Lease) with the consent of Landlord, which must be expressed in

7

writing and shall not be implied, such tenancy shall be month-to-month or on such terms as shall be agreed between Landlord and Tenant. Such continued occupancy shall not defeat Landlord's right to possession of the Premises, and the month-to-month tenancy provided for herein may be canceled at the end of any calendar month upon not less than ninety (90) days' prior written notice from Landlord to Tenant. Except for provisions relating to Lease Term, all covenants, provisions, obligations and conditions of this Lease shall remain in full force and effect during such month-to-month tenancy.

In the event Tenant holds over without the consent of Landlord such tenancy shall be month-to-month only and not a year-to-year or based on any other time interval and shall be at one hundred fifty percent (150%) of the immediately succeeding fixed monthly rental rate plus its share of all other applicable charges.

16. **LANDLORD'S REMEDIES UPON DEFAULT.**

In the event that any of the following (hereinafter referred to as an "Event of Default") shall occur:

a. Tenant shall at any time be in default of the payment of rent or other charges due under this Lease, and Tenant shall fail to remedy such default within ten (10) days after receipt of written notice of such default from Landlord; or

b. Tenant shall at any time be in default of the performance of any of its obligations under this Lease other than payment of rent or other charges, and Tenant shall fail to remedy such default within thirty (30) days after receipt of written notice of such default from Landlord, provided, however, that Tenant shall not be deemed in default if such default cannot be cured within such thirty (30) day period and Tenant commences curing such default within such thirty (30) day period and thereafter diligently pursues such cure; or

c. Tenant shall be adjudged a bankrupt or make an assignment for the benefit of creditors; or

d. a receiver of any property of Tenant in or upon the Premises shall be appointed in any action, suit or proceeding by or against Tenant and not removed within ninety (90) days after appointment; or

e. if the interest of Tenant in the Premises shall be sold under execution or other legal process;

then upon the occurrence of such event and the termination of the applicable notice period hereinabove provided without cure,

8

**EXHIBIT A**

Landlord may without further notice or demand enter into the Premises and take full and absolute possession thereof, without such reentry causing a forfeiture of the rent to be paid or the covenants to be performed by Tenant hereunder for the full term of this Lease, and upon such reentry Landlord may lease or sublease the Premises for such rent as Landlord may reasonably obtain, crediting Tenant with the rent so obtained after deducting the costs Landlord reasonably incurs by such reentry, leasing or subleasing; or in the alternative, Landlord in its sole discretion may terminate this Lease and reenter and take full and absolute possession of the Premises, releasing Tenant from further obligation hereunder and free from any further right or claim by Tenant. Landlord hereby waives any statutory or other Landlord lien on Tenant's personal property.

**17. NONWAIVER OF DEFAULT.**

No acquiescence by either party in any breach of covenant or default by the other party hereunder shall operate as a waiver of the acquiescing party's rights with respect to any other breach or default, whether of the same or any other covenant or condition.

**18. QUIET ENJOYMENT.**

Landlord covenants and agrees that if Tenant shall perform all covenants and agreements herein stipulated to be performed on Tenant's part, then at all times during the term of this Lease and any renewal or extension thereof Tenant shall have the peaceable and quiet enjoyment and possession of the Premises, without any manner of hindrance from Landlord or any other person or entity.

Landlord hereby represents and warrants that its execution of this Lease, compliance with the terms hereof and occupation of the Premises by Tenant will not conflict with, cause a breach of or constitute a default under the terms of any agreement or instrument to which Landlord is a party.

A breach of this Article by Landlord shall entitle Tenant to all available equitable relief as well as any and all remedies at law, and Landlord shall indemnify Tenant from and against all damages, expenses and costs arising out of or resulting therefrom.

**19. DAMAGE OR DESTRUCTION.**

Should the Premises be damaged by fire or other insured casualty after rent hereunder commences to accrue, such building shall be restored by Landlord, such restoration to be as nearly as possible to the building's size and character as it existed prior to the damage or destruction. The insurance proceeds and all monies which Landlord shall receive by reason of any loss or destruction of the building or improvements are hereby constituted a trust fund to be used by Landlord for the rebuilding of the building and

9

improvements on the Premises. If the insurance proceeds are less than the cost of actual repair and replacement, Landlord shall supply additional funds therefor. If such proceeds exceed the cost of said repairing, the surplus shall belong to Landlord. Rent payments hereunder shall abate during any such period of restoration.

If the destruction or damage of the Premises cannot reasonably be repaired within one hundred eighty (180) days after the occurrence thereof, Landlord shall notify Tenant within sixty (60) days after the happening of such destruction or damage whether or not Landlord will repair or rebuild. If Landlord elects not to repair or rebuild, this Lease shall be terminated. If Landlord elects to repair or rebuild, Landlord shall specify the time within which repairs or construction will be completed, and Tenant shall have the option within thirty (30) days after the receipt of such notice to elect either to terminate this Lease and further liability hereunder, or to extend the term hereof by a period of time equivalent to the period from the happening of such destruction or damage until the Premises are restored to their former condition. In the event Tenant elects to extend the term of this Lease, Landlord shall restore the Premises to their former condition within the time specified in the notice and Tenant shall be entitled to an abatement of rent and other charges in the manner hereinabove set forth. If Landlord fails to complete restoration of the Premises within the specified time, then Tenant at its election may terminate this Lease and quit the Premises upon written notice to Landlord except if Landlord has substantially completed the restoration, has acted with reasonable diligence and good faith and such restoration can be completed within an additional thirty (30) days, Tenant shall not have the right to terminate.

If this Lease is terminated for any reason pursuant to this Article, Landlord shall promptly refund to Tenant any rent paid in advance and any unearned charges.

## 20. WAIVER OF SUBROGATION.

Landlord and Tenant hereby waive all rights of subrogation which either has or which may arise hereafter against the other for any damage to the Premises or any other real or personal property or any business caused by perils covered by fire and extended coverage, building, contents and business interruption insurance, or for which either party may be reimbursed as a result of insurance coverage affecting any loss suffered by it; provided, however, that the foregoing waivers do not invalidate any policy of insurance of the parties hereto now or hereafter issued, it being stipulated by the parties hereto that such waiver shall not apply in any case which would result in the invalidation of any such policy of insurance. Each party shall notify the other if such party's insurance would be so invalidated.

10

21.  CONDEMNATION AND EMINENT DOMAIN.

In the event the entire Premises are taken by eminent domain, this
Lease shall terminate and expire as of the date of such taking and
Landlord hereby agrees to repay Tenant any monies held by it as
unearned rents.   Tenant shall have a proportionate share of any
condemnation  award  granted  or  obtained  in  the  amount  any
unamortized leasehold improvements made by Tenant bears to the
total value of the Premises.

In the event that any part of the building on the Premises is taken
by eminent domain, or if more than fifteen percent (15%) of the
parking area or if either of the two driveways on "R" Street and
48th Street respectively, as depicted on Exhibit B are taken, then
Tenant shall have the option of terminating this Lease or electing
to remain in that portion of the Premises which have not been
taken.

In any event where part of the building on the Premises is taken by
eminent domain and this Lease is not terminated, but continues, the
rent payable hereunder shall be reduced in the proportion that the
square footage of the remaining building on the Premises bears to
the square footage of the original entire building the Premises
hereunder.   Landlord shall immediately make such alterations or
repairs at its own cost and expense as may be necessary to restore
the building on the Premises to as reasonably a complete unit of
like quality and character as existed prior to such taking, and
rental  shall  be  adjusted  and  abated  during  the  period  of
restoration.

In the event that any part of the parking lot or driveway in the
Shopping Center is taken by eminent domain and this Lease is not
terminated,  an  equitable  adjustment,  considering  all  factors
involved, will be made to the annual fixed rent payable hereunder.
Tenant shall have the right to claim any award allowed by law to
Tenant  for  loss  of  business,  moving  expenses,  removal  and
reinstallation costs, and damages to merchandise or fixtures.

22.  INSURANCE.

Tenant shall, in addition to other obligations, do the following:

(a) Carry public liability insurance covering the Premises in
the amount of Two Million and No/100 Dollars ($2,000,000.00),
single limit.   The policy shall name Landlord and Tenant as
the insured, and shall contain a clause that the insurer will
not cancel or change the insurance without first giving
Landlord thirty (30) days prior written notice.  A certificate
of insurance shall be delivered to Landlord each year during
the term hereof.

(b)   Keep the Premises and Tenant's trade fixtures at all

11

times during the term hereof insured against loss by fire or other casualty with fire and extended coverage insurance in an amount equal to its full replacement value. Such insurance shall be maintained in companies authorized to do business in the state. The policies of insurance for Tenant's building shall set forth the interests of Landlord, and a certificate of insurance shall be delivered to Landlord each year during the term hereof. Tenant shall be allowed to use blanket type insurance.

(c)   Landlord shall maintain public liability insurance coverage for casualties occurring on or about the common area in an amount not less than Two Million and No/100 Dollars ($2,000,000.00) combined single limit naming Tenant as and additional insured. Tenant shall pay its proportionate share of the costs as in common area charges.

(d)   Landlord shall procure and maintain throughout the entire term of this Lease fire and extended coverage insurance in an amount not less than the full insurable value of the Shopping Center (including the Premises), on a replacement cost basis, insuring Landlord and Tenant (as their respective interests may appear) against loss or damage thereto by fire and other casualties covered by the standard form of fire and extended coverage insurance available in the State in which the Premises are located. Tenant shall pay its proportionate shares of Landlord's cost of insurance, calculated in the manner described in Article 27 hereof.

## 23.   SUBORDINATION OF LEASE.

At the option of Landlord, this Lease shall be superior or subordinate to the lien of any mortgage upon the Premises on any property of which the Premises form a part; provided that such subordination is made upon the condition that in the event of foreclosure or other action taken under the mortgage, this Lease and the rights of Tenant hereunder shall not be disturbed but shall continue in full force and effect so long as Tenant shall not have committed an Event of Default hereunder, and that such mortgage shall permit insurance proceeds to be used for any restoration and repair required by the provisions of this Lease as set forth in Article 19 hereof. The word "mortgage," as used herein, includes a mortgage, deed of trust or other similar instrument and any modification, extension, renewal or replacement thereof. Landlord agrees to deliver to Tenant, upon execution of this Lease, a Non-Disturbance Agreement in form acceptable to Tenant from the holder of any mortgage affecting the Premises.

## 24.   TRANSFER OF INTEREST.

Landlord may at any time transfer its interest in this Lease and underlying fee. Tenant shall receive a true, correct and complete

12

EXHIBIT A

copy of an instrument notifying Tenant of the assignment of Landlord's interest in this Lease or Landlord's fee interest in the Premises. Any such instrument shall evidence the fact that the assignee or transferee thereunder has assumed all of Landlord's obligations under this Lease and acquired sufficient title to the Premises to enable it to perform such obligations.

Tenant shall have the right at any time to assign this Lease or sublet all or any part of the Premises, provided Tenant shall remain liable for the full performance of all terms, covenants and conditions of this Lease except that in the event of an assignment to any person or entity with equal or greater net worth than Tenant, which at this date is not less than Fifty Million and No/100 Dollars ($50,000,000.00), Tenant shall be released from all liability and obligation hereunder effective as of the date of such assignment; and, further provided, that such assignee or sublessee shall agree to be bound by all the terms and provisions hereof.

In event of a proposed sublease by Tenant other than to a corporate parent, subsidiary, or affiliate of Tenant, and at a sublease rental in excess of the rental provided for herein, Landlord shall, in addition to its other rights under this Article, have the option of cancelling this Lease upon thirty (30) days written notice to Tenant and entering into, a new lease directly with the proposed subtenant. In the event Landlord exercises the option referenced to in this paragraph, Tenant shall no longer have any rights or obligations under this Lease and this Lease shall be null and void and of no further force or effect.

Best Buy Co., Inc., the party to this Lease, is a publicly traded corporation.

## 25. REAL ESTATE TAXES.

If the Premises are separately assessed, Tenant shall pay all real estate taxes and all installments of assessments (collectively, the "Taxes") payable with respect to the Premises during the Lease Term promptly as the same shall become due and before interest or penalty accrues thereon. Such payment shall be proportionately adjusted during the first and the last years of the term hereof.

In the event the Premises are not separately assessed, Tenant shall pay to Landlord Tenant's proportionate share of the Taxes payable with respect to the Shopping Center during the Lease Term. Tenant's proportionate share shall be equal to a fraction, the numerator of which is the number of leasable square feet in the Premises and the denominator of which is the number of leasable square feet in all buildings of the Shopping Center (and any other buildings included within the tax parcel). Tenant shall pay such amounts to Landlord on or before the later of (i) ten (10) days prior to the due date of the Taxes and (ii) thirty (30) days after billing from Landlord. Tenant shall pay only its proportionate

13

share of Taxes payable with respect to the Shopping Center land until such time as the improvements comprising the Premises are assessed, and Tenant shall not pay any Taxes against the buildings comprising the Shopping Center until such time. Tenant shall under no circumstances be liable for increases in real estate taxes due to expansion of or improvements to any adjacent shopping center or other adjacent property.

Notwithstanding anything to the contrary contained herein, the definition of Taxes shall not include, and Tenant shall have no obligation to pay, any assessments levied, pending or assessed prior to the Commencement Date or which relate to special assessments for work performed prior to the Commencement Date.

Tenant shall at all times be solely responsible for and shall pay before delinquency all municipal, county, state or federal taxes assessed or levied against any leasehold interest hereunder or any personal property of any kind owned, installed or used by Tenant. If at any time during the term of this Lease, a tax or excise on rents or other tax, however described, is levied or assessed against Landlord on account of or measured by, in whole or in part, the rent expressly reserved hereunder (excluding any income, corporate franchise, corporate, estate, inheritance, succession, capital stock, corporate loan, corporate bonus, transfer or profit tax of Landlord) as a substitute, in whole or in part, for taxes assessed or imposed on land and buildings, such tax or excise on rents or other tax shall be included as a part of the real property taxes covered hereby, but only to the extent of the amount thereof which is lawfully assessed or imposed as a direct result of Landlord's ownership of this Lease or of the rentals accruing under this Lease. If any real property tax or assessment levied against the land, buildings or improvements covered hereby or the rents reserved therefrom shall be evidenced by improvement or other bonds or in other form which may be paid in installments, Landlord shall, if permitted, elect such installment payment plan and only the amount paid in any Lease Year shall be included in the taxes for that Lease Year for purposes of this Article.

## 26. RIGHT OF PROTEST.

Tenant may contest any mechanics' or other liens imposed against the Premises, provided Tenant believes in good faith that such liens are not proper, and further provided that Tenant furnishes Landlord reasonable security to ensure payment and to prevent any sale, foreclosure or forfeiture of the Premises by reason of such nonpayment. Tenant shall furnish to Landlord such security as Landlord may reasonably request pursuant to the foregoing sentence within thirty (30) days of receiving a written request therefor. Upon a final determination of the validity of such lien or claim, Tenant shall promptly pay any judgment or decree rendered against Tenant or Landlord, including without limitation all proper costs and charges, and shall cause such lien to be released of record.

14

all without cost to Landlord.

27.   COMMON AREAS.

Landlord agrees to perform all repair, replacement and maintenance
of common areas including, without limitation, all driveways,
walks, parking area, lighting, snow removal, landscaping, painting,
and liability insurance premiums.  Tenant shall reimburse Landlord
for a prorata portion of the expense incurred by Landlord herein,
excluding depreciation, principal, interest and other charges on
debt, cost of capital improvements, administrative and promotional
fees, costs to remove hazardous materials, unless such hazardous
material was introduced by or attributable to Tenant, such portion
to be calculated by multiplying the sum of Landlord's expenses,
plus a management fee in the amount of five percent (5%) of
Landlord's expenses, less real estate taxes and insurance, times a
fraction of which the square footage of Tenant's building is the
numerator and the square footage of the entire leasable building
area in the Shopping Center whether developed or not, is the
denominator.   The annual charges for common area and parking area
maintenance costs shall be paid in monthly installments on the
first day of each calendar month in advance in an amount estimated
by Landlord.   Within ninety (90) days after the end of each lease
year or partial lease year, Landlord shall furnish Tenant a
statement in reasonable detail of the actual common area and
parking maintenance cost paid or incurred by Landlord during such
period prepared in accordance with sound accounting practices by a
certified public account employed by Landlord, and thereupon there
shall be an adjustment between Landlord and Tenant with payment to
or repayment by Landlord as the case may require, to the end that
Landlord shall receive the entire amount of Tenant's prorata share
of such costs for such period and no more.  Landlord agrees to make
all records of its expenses herein available to Tenant for
inspection (i) at Landlord's office in Milwaukee, Wisconsin during
normal business hours for one (1) year after submission of each
invoice to Tenant, or (ii) at Tenant's request at other reasonable
times and places.

28.   OBSTRUCTIONS.

Landlord will not place or permit to be placed by any person or
entity other than Tenant, any building, wall, landscaping, fence or
other improvement in the Shopping Center other than improvements
shown as existing or planned on the site plan attached hereto as
Exhibit B.

29.   RIGHT OF FIRST REFUSAL ON ADJOINING SPACE.

[INTENTIONALLY OMITTED]

15

30.  EXCLUSIVITY AND USE.

Tenant shall initially use the Premises for sales, rental, service and warehousing (and if applicable, installation in motor vehicles) of the product categories listed below and thereafter for any lawful use, and Landlord shall not permit any person or entity other than Tenant in space leased directly or indirectly from Landlord within a radius of one (1) mile of the Shopping Center, to sell, rent, service and/or warehouse (and, if applicable, installation in motor vehicles) the following product categories: electronic equipment or appliances (including, without limitation, televisions, stereos, video recorders); major household appliances (including, without limitation, refrigerators, freezers, stoves, microwave ovens, dishwashers, washers and dryers); personal computers and peripherals, computer software; car radios, stereos, tape decks or phones; entertainment software including compact discs, music videos and prerecorded tapes; telephones, telecopy, facsimile and photocopy machines; photographic cameras or equipment; or any other related items without Tenant's prior written consent which may be granted or withheld in Tenant's sole and absolute discretion. "Landlord", for purposes of this Article, shall be defined to include Landlord and (i) if Landlord is a corporation, its principal shareholders; or (ii) if Landlord is a partnership, its partners and any principal shareholders or partners of any partner which is a corporation or shareholder; or (iii) if Landlord is a trust, the beneficiaries of any such trust including the principal shareholders or partners of any beneficiary which is a corporation or trust, all of whom shall execute an agreement to be bound to this Article.

The foregoing restrictions shall not apply to (i) tenants of the Shopping Center occupying less than 3,000 square feet of space provided such sales, rental, service, warehousing or motor vehicle installation of the foregoing products is an incidental part of the tenant's retail business and the total number of square feet dedicated to the sales, rental, service, warehousing or motor vehicle installation of any, all, or any combination of the foregoing products does not exceed 900 square feet, and (ii) Cellular One under its current lease and any extensions thereof, square footage, location and configuration.

31.  HAZARDOUS SUBSTANCES.

     a.   **Environmental Assessment.**  Landlord shall provide, at Landlord's expense, within ten (10) days after execution of this Lease, any existing environmental assessment report if there is one prepared by a qualified environmental testing company.

     b.   **Warranty.**  Landlord hereby warrants and represents that: (a) to the best of Landlord's knowledge, the Premises has never been used by current or previous owners or occupants to generate, transport, treat, store, manufacture, emit, dispose of, refine or

16

handle any dangerous, toxic or hazardous pollutants, chemicals, wastes or substances, (b) to the best of Landlord's knowledge, the Premises does not contain any underground storage tanks or any asbestos, polychlorinated biphenyls (PCBs) or other toxic materials, pollutants, hazardous substances or hazardous wastes; (c) Landlord has not received a summons, citation, directive, letter or other communication, written or oral, from any state agency or the U.S. Government concerning the Premises or any intentional or unintentional action or omission on Landlord's part as a result of the releasing, spilling, leaking, pumping, pouring, emitting, emptying or dumping of toxic or hazardous pollutants, chemicals, wastes or substances into waters or onto lands of the state in which the Premises is located, or into water outside the jurisdiction of the state in which the Premises is located, and the Premises is not subject to any "superfund" type liens or claims by governmental regulatory agencies or other third parties arising from the release or threatened release of toxic or hazardous pollutants, chemicals, wastes or substances in, on or about the Premises; and (d) it has furnished Tenant with copies of all environmental reports in its possession or control as to the Premises.

c. **Indemnification.** Landlord shall indemnify, defend and hold Tenant harmless from and against any and all loss, cost, liability, damage or expense (including without limitation attorney's fees, investigation and court costs) which Tenant may incur, sustain or suffer or which may be asserted against Tenant by reason of any violation of any representation or warranty made by Landlord herein; any liability Tenant may incur for cleanup or response costs, fines or penalties resulting from a release or a threatened release of any materials defined in paragraph b above; and any personal injury, death, property, property damage, business losses, or damage to the environment, provided as to any warranty based on Landlord's knowledge, actual knowledge by an employee, officer or principal of Landlord shall be required and shall not be imputed or implied.

## 32. ATTORNEY'S FEES.

In the event Tenant or Landlord defaults in the performance of any of the terms, covenants, agreements or conditions contained in this Lease and the other party places in the hands of an attorney the enforcement of all or any part of this Lease, the defaulting party agrees to pay the other party's reasonable attorneys' fees for the services of the attorney following a final or non-appealable determination of the issues. If Landlord fails to pay any such fees on demand, Tenant may deduct the amount of such fees from the fixed rent and other charges otherwise due hereunder.

## 33. BROKERAGE.

Tenant or a third party shall pay all brokerage fees, commissions,

finder's fees or other similar charge in connection with this Lease, except that Landlord shall pay Fifteen Thousand and No/100 Dollars ($15,000.00) as a commission to Buyer's Realty and its agreed fee to National Management, Inc.

## 34. NOTICES.

Any notice or consent required to be given by or on behalf of either party to the other shall be in writing and given by mailing such notice or consent by either (i) one (1) business day after sending by an overnight courier service, or (ii) two (2) business days after sending by registered or certified mail, return receipt requested, addressed to the other party as indicated in Article I(F) hereof, or at such other address as may be specified from time to time in writing by either party. Any notice or consent given hereunder by either party shall be deemed effective when mailed as aforesaid, but the time period in which to respond to any notice or consent shall commence to run on the date on which such notice or consent is actually received by the addressee. Refusal to accept delivery shall be deemed receipt thereof.

## 35. MISCELLANEOUS.

35.1. **Severability of Provisions.** If any term or provision of this Lease, or the application thereof to any person or circumstance, shall to any extent be determined to be invalid or unenforceable by a court of competent jurisdiction, then the remainder of this Lease, or the application of such term or provision to persons or circumstances other than those as to which it is held invalid or unenforceable, shall not be affected thereby.

35.2. **Memorandum of Lease.** Neither party may record this Lease. However, upon the request of either party hereto, the other party shall join in the execution of a Memorandum or so-called "Short Form" of this Lease for the purposes of recordation. Said Memorandum or Short Form of this Lease shall describe the parties, the Premises, the term of this Lease and any special provisions hereof, and shall incorporate this Lease by reference. Any fees required to be paid in order to prepare or record such Memorandum or Short Form of this Lease shall be paid by the party which initiated its preparation.

35.3. **Entire Agreement.** This instrument shall merge all undertakings between the parties hereto with respect to the Premises and upon execution by both parties shall constitute the entire lease agreement, unless thereafter modified by both parties in writing. In the event Landlord shall execute this Lease prior to Tenant, Tenant shall have ten (10) days to accept the terms hereof and to execute this Lease, during which time Landlord's execution shall constitute an irrevocable offer.

18

35.4. **Relationship of the Parties.** Nothing contained in this Lease shall be deemed or construed by the parties hereto or by a third party to create the relationship of principal and agent or of partnership or of joint venture of any association whatsoever between Landlord and Tenant, it being expressly understood and agreed that neither the method or computation of rent nor any other provision contained herein, nor any act or acts of the parties hereto, shall be deemed to create any relationship between Landlord and Tenant other than the relationship of lessor and tenant.

35.5. **Importance of Each Covenant.** Each covenant and agreement on the part of one party hereto is understood and agreed to constitute an essential part of the consideration for each covenant and agreement on the part of the other party.

35.6. **Headings.** The headings of the Articles of this Lease are for convenience of reference only and do not form a part hereof, and they shall not be interpreted or construed to modify, limit, or amplify the intent of such Articles.

35.7. **Parties in Interest.** Subject to the provisions of this Lease relating to assignment, subleasing and other transfers of the parties' interests, this Lease shall inure to the benefit of and be binding upon the successors in interest and assigns of the parties hereto.

35.8. **Counterparts.** This Lease may be executed in any number of counterparts, each of which shall be deemed to be an original, but all of which shall constitute one and the same instrument.

35.9. **Number and Gender.** Words in the singular, plural, masculine, feminine and neuter as used herein shall have the meanings and be construed as required by the context in which they are used herein.

35.10. **Governing Law.** This Lease shall be construed and governed by the laws of the Nebraska. Should any provisions be illegal or not enforceable under the laws of the said state, it or they shall be considered severable, and the Lease and its conditions shall remain in force and be binding upon the parties as though the said provisions had never been included.

II. **EXHIBITS.**

Attached hereto and made a part of this Lease are Exhibits A through D.

19

IN WITNESS WHEREOF, the parties hereto have executed this Lease as of the date first above written.

LANDLORD:

PLAZA SIXTY, INC.

Date: _____7-1_____, 1994        By: _____

Its: _____

TENANT:

BEST BUY CO., INC.

Date: ___6~30___, 1994        By: _____

Its: _____

**EXHIBIT A**

## EXHIBIT A

### Legal Description of Shopping Center

[SEE ATTACHED]

21

**EXHIBIT A**

## PARCEL 1

A tract of land which consists of the Remaining Portion of
Lot 4, the Remaining Portion of Lot 13, and a part of the
Remaining Portion of Lot 14, all located in J.G. Miller's
Subdivision, located in the Southeast Quarter of Section 20,
Township 10 North, Range 7 East, of the 6th Principal
Meridian, Lancaster County, Nebraska, and being more
.particularly described as follows:

Referring to the Southwest corner of the Northwest Quarter of
the Southeast Quarter of Section 20; thence northerly on an
assumed bearing of N 00°18'05" W, on the west line of the
Southeast Quarter of said section, a distance of 59.69 feet;
thence easterly on a bearing of N 89°41'55" E, a distance of
60.00 feet, to the true point of beginning; thence northerly
on a bearing of N 00°18'07" W, a distance of 379.91 feet;
thence easterly on a bearing of N 89°43'20" E, a distance of
223.04 feet; thence northerly on a bearing of N 00°19'36" W,
a distance of 267.08 feet; thence westerly on a bearing of
S 89°41'53" W, a distance of 223.00 feet; thence northerly on
a bearing of N 00°18'37" W, a distance of 47.22 feet; thence
easterly on a bearing of N 89°41'51" E, a distance of 175.73
feet; thence northerly on a bearing of N 00°17'45" W, a
distance of 140.63 feet; thence westerly on a bearing of
S 89°42'13" W, a distance of 175.78 feet; thence northerly on
a bearing of N 00°17'37" W, a distance of 28.05 feet; thence
easterly on a bearing of N 89°45'46" E, a distance of 59.98
feet; thence northerly on a bearing of N 00°16'19" W, a
distance of 69.76 feet; thence easterly on a bearing of
N 89°57'53" E, a distance of 544.62 feet; thence southerly on
a bearing of S 00°09'34" E, a distance of 330.14 feet; thence
easterly on a bearing of N 89°50'49" E, a distance of 35.95
feet; thence southerly on a bearing of S 00°16'13" E, a
distance of 622.96 feet; thence westerly on a bearing of
N 89°59'58" W, a distance of 619.45 feet, to a point of
curvature; thence on a curve to the left having a radius of
20.00 feet, and a central angle of 89°41'51", with a chord
bearing of N 45°09'03" W, a chord distance of 28.21 feet, to
the true point of beginning.

# Exhibit A

# EXHIBIT A

Containing a calculated area of 11.689 acres, more or less.
Subject to all easements, restrictions, and reservations of
record.

**EXHIBIT A**

# SURVEY RECORD

Survey of ___A portion of Lots 4, 13, & 14, J.G. Miller's___

___Subdivision.___

Section __20__ T. __10__ N.   R. __7__ E. of the 6th P.M.

___Lancaster___ County, ___Nebraska___

Date of Survey ___5-9-94___   Job No. ___1026-948___



## Surveyor's Certificate

I Jayme M. Malone, a Professional Registered
Land Surveyor under the laws of the State of
Nebraska, certify the above survey was executed
by me, on the date shown. Permanent monu-
ment corners as described in the survey draw-
ing were placed at all missing or remonumented
corners. Distances shown are measured in feet
and decimals of a foot.

Signed _____ day of ___May___ , 19 94

Jayme M. Malone

Nebraska L.S. #440
Iowa     L.S. #1807
Kansas   L.S. #1111

**EXHIBIT A**

## PARCEL 2

A part of the Remaining Portion of Lot 13, J.G. Miller's
Subdivision, located in the Southeast Quarter of Section 20,
Township 10 North, Range 7 East, of the 6th Principal
Meridian, Lancaster County, Nebraska, and being more
particularly described as follows:

Referring to the Southwest corner of the Northwest Quarter of
the Southeast Quarter of Section 20; thence northerly on an
assumed bearing of N 00°18'05" W, on the west line of the
Southeast Quarter of said section, a distance of 59.69 feet;
thence easterly on a bearing of N 89°41'55" E, a distance of
60.00 feet; thence northerly on a bearing of N 00°18'07" W, a
distance of 379.91 feet, to the true point of beginning;
thence easterly on a bearing of N 89°43'20" E, a distance of
223.04 feet; thence northerly on a bearing of N 00°19'36" W,
a distance of 150.58 feet; thence westerly on a bearing of S
89°41'42" W, a distance of 222.98 feet; thence southerly on a
bearing of S 00°18'37" E, a distance of 150.47 feet, to the
true point of beginning.

Containing a calculated area of 0.770 acres, more or less.
Subject to all easements, restrictions, and reservations of
record.

**EXHIBIT A**



# SURVEY RECORD

Survey of __A portion of Lots 4, 13, & 14, J.G. Miller's__
__Subdivision.__

Section __20__ T. __10__ N.  R. __7__ E. of the 6th P.M.

_____Lancaster_____ County, _____Nebraska_____

Date of Survey ___5-9-94___     Job No. __1026-94B__

## Surveyor's Certificate

I Jayme M. Malone, a Professional Registered
Land Surveyor under the laws of the State of
Nebraska, certify the above survey was executed
by me, on the date shown  Permanent monu-
ment corners as described in the survey draw-
ing were placed at all missing or remonumented
corners.  Distances shown are measured in feet
and decimals of a foot.

Signed this __day of __May__, 19 94.

Jayme M. Malone

Nebraska L.S. #440
Iowa L.S. #11802
Kansas L.S. #1113

**EXHIBIT A**

PARCEL 3

A part of the Remaining Portion of Lot 13, J.G. Miller's
Subdivision, located in the Southeast Quarter of Section 20,
Township 10 North, Range 7 East, of the 6th Principal
Meridian, Lancaster County, Nebraska, and being more
particularly described as follows:

Referring to the Southwest corner of the Northwest Quarter of
the Southeast Quarter of Section 20; thence northerly on an
assumed bearing of N 00°18'05" W, on the west line of the
Southeast Quarter of said section, a distance of 59.69 feet;
thence easterly on a bearing of N 89°41'55" E, a distance of
.60.00 feet; thence northerly on a bearing of N 00°18'37" W, a
distance of 530.38 feet, to the true point of beginning;
thence easterly on a bearing of N 89°41'42" E, a distance of
222.98 feet; thence northerly on a bearing of N 00°19'36" W,
a distance of 116.50 feet; thence westerly on a bearing of S
89°41'53" W, a distance of 223.00 feet; thence southerly on a
bearing of S 00°18'37" E, a distance of 116.52 feet, to the
true point of beginning.

Containing a calculated area of 0.596 acres, more or less.
Subject to all easements, restrictions, and reservations of
record.

**EXHIBIT A**



# SURVEY RECORD

Survey of __A portion of Lots 4, 13, & 14, J.G. Miller's__

__Subdivision.__

Section __20__ T. __10__ N.  R. __7__ E. of the 6th P.M.

__Lancaster__    County, __Nebraska__

Date of Survey __5-9-94__    Job No. __1026-948__

## Surveyor's Certificate

I Jayme M. Malone, a Professional Registered
Land Surveyor under the laws of the State of
Nebraska, certify the above survey was executed
by me, on the date shown. Permanent monu-
ment corners as described in the survey draw-
ing were placed at all missing or remonumented
corners. Distances shown are measured in feet
and decimals of a foot.

Signed _____ day of __May__ , 19 __94__

Jayme M. Malone

Nebraska L.S. #440
Iowa     L.S. #11907
Kansas   L.S. #1115

**EXHIBIT A**

## PARCEL 4

A part of the Remaining Portion of Lot 4, J.G.  Miller's
Subdivision, located in the Southeast Quarter of Section 20,
Township 10 North, Range 7 East, of the 6th Principal
Meridian, Lancaster County, Nebraska, and being more
particularly described as follows:

Referring to the Southwest corner of the Northwest Quarter of
the Southeast Quarter of Section 20; thence northerly on an
assumed bearing of N 00°18'05" W, on the west line of the
Southeast Quarter of said section, a distance of 59.69 feet;
thence easterly on a bearing of N 89°41'55" E, a distance of
·60.00 feet; thence northerly on a bearing of N 00°18'37" W, a
distance of 862.81 feet, to the true point of beginning;
thence easterly on a bearing of N 89°45'46" E, a distance of
59.98 feet; thence northerly on a bearing of N 00°16'19" W, a
distance of 69.76 feet; thence westerly on a bearing of N
89°58'32" W, a distance of 60.03 feet; thence southerly on a
bearing of S 00°18'37" E, a distance of 70.03 feet, to the
true point of beginning.

Containing a calculated area of 0.096 acres, more or less.
Subject to all easements, restrictions, and reservations of
record.

**EXHIBIT A**



# SURVEY RECORD

Survey of   A portion of Lots 4, 13, & 14, J.G. Miller's

Subdivision.

Section  20  T. 10 N.  R. 7  E. of the 6th P.M.

          Lancaster      County,    Nebraska

Date of Survey   5-9-94        Job No.  1026-94B

## Surveyor's Certificate

I Jayme M. Malone, a Professional Registered
Land Surveyor under the laws of the State of
Nebraska, certify the above survey was executed
by me, on the date shown.  Permanent monu-
ment corners as described in the survey draw-
ing were placed at all missing or remonumented
corners.  Distances shown are measured in feet
and decimals of a foot.

Signed this _____ day of _____ May ____, 19 94.

Jayme M. Malone

Nebraska  L.S. #440
Iowa      L.S. #11507
Kansas    L.S. #1113

**EXHIBIT A**

**EXHIBIT B**

**Site Plan**

[SEE ATTACHED]

22

**EXHIBIT A**



*Exhibit B*

**EXHIBIT A**



Exhibit B

**EXHIBIT C**

**Permitted Title Exceptions**
(Title Commitment/Policy)

[SEE ATTACHED]

23

JUN 21 '94  09:43AM 4142262101                                                P.6

DAKOTA TITLE AND ESCROW COMPANY
Bonded Abstractors

LS-10553

TITLE SEARCH

Total Fee Charged: $300.00

To: Keith Granzin
    National Management
    1818 No. Farwell
    Milwaukee, WI
         This is to certify that we have carefully examined the records in the
Register of Deeds Office, Lancaster County, Nebraska with reference to:

PARCEL 1:

A parcel of land composed of a portion of Lots 4, 13 and 14, J.G.
Miller's Subdivision located in the SE 1/4 of Section 20, Township
10 North, Range 7 East of the 6th P.M., Lancaster County, Nebraska,
and more particularly described as follows:

Commencing at the Southwest corner of the NW 1/4 SE 1/4 of said
section, thence in an Easterly direction along the centerline of
"R" Street on an assumed bearing of N 90 degrees 00' 00" East a
distance of 60.00 feet, thence in a Northerly direction along a
line 60.00 feet East of and parallel to the centerline of North
48th Street on a bearing of N 0 degrees 18' 04" West a distance of
59.90 feet to the point of beginning of Parcel 1, thence along the
East R.O.W line of North 48th Street, in a Northerly direction on
a bearing of N 0 degrees 18' 04" West a distance of 379.85 feet,
thence in an Easterly direction on a bearing of North 89 degrees
41' 56" East a distance of 223.00 feet, thence in a Northerly
direction on a bearing of North 0 degrees 18' 04" West a distance
of 266.99 feet, thence in a Westerly direction on a bearing of S 89
degrees 41' 56" West a distance of 223.00 feet to a point on the
East R.O.W. line of North 48th Street, thence in a Northerly
direction along said East R.O.W. line on a bearing of N 0 degrees
18' 04" West a distance of 47.25 feet, thence in an Easterly
direction on a bearing of N 89 degrees 41' 56" East a distance of
175.73 feet, thence in a Northerly direction on a bearing of North
0 degrees 18' 04" West a distance of 140.60 feet, thence in a
Westerly direction on a bearing of S 89 degrees 41' 56" West a
distance of 175.73 feet to a point on the East R.O.W. line of North
48th Street, thence in a Northerly direction along the said East
R.O.W. line on a bearing of N 0 degrees 18' 04" West a distance of
28.08 feet, thence in an Easterly direction on a bearing of N 89
degrees 41' 56" East a distance of 60.00 feet, thence in a
Northerly direction on a bearing of N 0 degrees 18' 04" West a
distance of 69.73 feet, thence in an Easterly direction on a
bearing of N 89 degrees 57' 11" East a distance of 543.96 feet to
a point on the East line of Lot 4, thence in a Southerly direction
along said East line on a bearing of S 0 degrees 14' 40" East a
distance of 330.18 feet to the Northeast corner of Lot 13, thence
in an Easterly direction along the North line of Lot 14 on a
bearing of N 89 degrees 59' 22" East a distance of 36.00 feet,
thence in a Southerly direction along a line 36.00 feet East of and
parallel to the West line of Lot 14 on a bearing of South 0 degrees
15' 37" East a distance of 823.00 feet to a point 40.00 feet North
of the centerline of "R" Street, thence in a Westerly direction
along a line 40.00 feet North of and parallel to the centerline of
"R" Street, on a bearing of S 90 degrees 00' 00" West a distance of
619.29 feet to a point of curvature of a 20.00 foot radius curve to
the right, having a tangent of 18.90 feet and a central angle of 89
degrees 41' 55", thence along said curve an arc distance of 31.31
feet to the point of tangency, said point also being the point of
beginning, except that portion thereof deeded to the City of
Lincoln, Nebraska by the instrument filed March 23, 1987 at
Instrument No. 87-8849, described as commencing at the Southwest
corner of the Northwest 1/4 of the Southeast 1/4 of Section 20,
*SEE ATTACHED

Exhibit C

JUN 21 '94  09:49                    4142262101                    PAGE 006

# EXHIBIT A

*Township 10 North, Range 7 East, thence East on the centerline of
"R" Street, a distance of 60 feet; thence North 33 feet to the
intersection of the North right of way line of "R" Street and the
East right of way line of North 48th Street which is the point of
beginning, thence East on a bearing of S 90 degrees 00' 00" E a
distance of 639.19 feet; thence North on a bearing of N 0 degrees
15' 37" E a distance of 7 feet; thence West on a bearing of N 90
degrees 00' 00" W to a point on the East right of way line of North
48th Street, thence South on the East right of way line of North
48th Street a distance of 7 feet to the point of beginning AND
commencing at the Southwest corner of the Northwest 1/4 of the
Southeast 1/4 of Section 20, Township 10 North, Range 7 East;
thence East on the centerline of "R" Street a distance of 60 feet;
thence North 40 feet to the point of beginning; thence East on a
bearing of S 90 degrees 00' 00" E a distance of 20 feet; thence
Northwesterly on a curve to the right whose radius is 20 feet and
has a central angle of 90 degrees 00' 00" an arc distance of 31.416
plus or minus feet to its intersection with the East right of way
line of North 48th Street; thence South on a bearing of S 0 degrees
18' 04" East a distance of 20 feet to the point of beginning.


PARCEL 2:

A portion of Lot 13, J.G. Miller's Subdivision located in the SE
1/4 of Section 20, Township 10 North, Range 7 East of the 6th P.M.,
Lancaster County, Nebraska, and more particularly described as
commencing at the Southwest corner of the Northwest 1/4 Southeast
1/4 of said section, thence in an Easterly direction along the
centerline of "R" Street, on an assumed bearing of N 90 degrees 00'
00" East a distance of 60.00 feet, thence in a Northerly direction
along a line 60.00 feet East of and parallel to the centerline of
North 48th Street on a bearing of N 0 degrees 18' 04" West a
distance of 439.73 feet to the Point of Beginning of Parcel 2,
thence continuing along the East right-of-way line of North 48th
Street in a Northerly direction on a bearing of N 0 degrees 18' 04"
West a distance of 150.50 feet, thence in an Easterly direction on
a bearing of N 89 degrees 41' 56" East a distance of 223.00 feet,
thence in a Southerly direction on a bearing of S 0 degrees 18' 04"
East a distance of 150.50 feet, thence in a Westerly direction on
a bearing of S 89 degrees 41' 56" West a distance of 223.00 feet to
the point of beginning.

PARCEL 3:

A portion of Lots 4 and 13, J.G. Miller's Subdivision located in
the SE 1/4 of Section 20, Township 10 North, Range 7 East of the
6th P.M., Lancaster County, Nebraska and more particularly
described as follows:

Commencing at the Southwest corner of the Northwest 1/4 Southeast
1/4 of said section, thence in an Easterly direction along the
centerline of "R" Street on an assumed bearing of N 90 degrees 00'
00" East a distance of 60.00 feet, thence in a Northerly direction
along a line 60.00 feet East of and parallel to the centerline of
North 48th Street on a bearing of N 0 degrees 18' 04" West a
distance of 590.25 feet to the Point of Beginning of Parcel 3,
thence continuing along the East right-of-way line of North 48th
Street in a Northerly direction on a bearing of N 0 degrees 18' 04"
West a distance of 116.50 feet, thence in an Easterly direction on
a bearing of N 89 degrees 41' 56" East a distance of 223.00 feet,
thence in a Southerly direction on a bearing of S 0 degrees 18' 04"
East a distance of 116.50 feet, thence in a Westerly direction on
a bearing of S 89 degrees 41' 56" West a distance of 223.00 feet to
the point of beginning.

**EXHIBIT A**

PARCEL 4:

A portion of Lot 4, J.G. Miller's Subdivision located in the SE 1/4
of Section 20, Township 10 North, Range 7 East of the 6th P.M.,
Lancaster County, Nebraska, and more particularly described as
follows:
Commencing at the Southwest corner of the Northwest 1/4 Southeast
1/4 of said section, thence in an Easterly direction along the
centerline of "R" Street on an assumed bearing of N 90 degrees 00'
00" East a distance of 60.00 feet, thence in a Northerly direction
along a line 60.00 feet East of and parallel to the centerline of
North 48th Street on a bearing of N 0 degrees 18' 04" West a
distance of 922.68 feet to the point of beginning of Parcel 4,
thence continuing along the East right-of-way line of North 48th
Street in a Northerly direction on a bearing of N 0 degrees 18' 04"
West a distance of 70.00 feet, thence in an Easterly direction on
a bearing of N 89 degrees 57' 11" East a distance of 60.00 feet,
thence in a Southerly direction on a bearing of S 0 degrees 18' 04"
East a distance of 69.73 feet, thence in a Westerly direction on a
bearing of S 89 degrees 41' 56" West a distance of 60.00 feet to
the point of beginning.

          The record title is vested in   Plaza Sixty, Inc., a Wisconsin
Corporation.

Deed of Trust, Security Agreement and Assignment of Rents executed
by Plaza Sixty, Inc., a Wisconsin corporation, to William E.
Langdon, as Trustee, and the Beneficiary is Metro North State Bank,
a Missouri banking corporation, in the sum of $9,500,000.00, dated
September 15, 1989, recorded September 15, 1989, Instrument No. 89-
26538, Records of Lancaster County, Nebraska; with Assignment to
The Merchants Bank, a Missouri trust company; dated October 5,
1992, recorded October 20, 1992, Instrument No. 92-46792, Records
of Lancaster County, Nebraska.*

Deed of Trust, Security Agreement and Assignment of Rents executed
by Plaza Sixty, Inc., a Wisconsin corporation, to Richard A.
Johnson, as Trustee, and the Beneficiary is Metro North State Bank,
a Missouri banking corporation, in the sum of $9,500,000.00, dated
September __, 1989, recorded September 25, 1989, Instrument No. 89-
27476, Records of Lancaster County, Nebraska; with Assignment to
The Merchants Bank, a Missouri trust company, dated October 5,
1992, recorded October 20, 1992, Instrument No. 92-46792, Records
of Lancaster County, Nebraska.*

*If all or any part of the property is sold or transferred without
prior written consent of the lender, lender may at its option
declare all sums secured immediately due and payable. Lender shall
have option to accelerate.

Assignment of Leases and Rents executed by Plaza Sixty, Inc., a
Wisconsin corporation, to Metro North State Bank, a Missouri
banking corporation, in the sum of $9,500,000.00, dated September
15, 1989, recorded September 15, 1989, Instrument No. 89-26539,
Records of Lancaster County, Nebraska; with Assignment to The
Merchants Bank, a Missouri trust company, dated October 5, 1992,
recorded October 20, 1992, Instrument No. 92-46792, Records of
Lancaster County, Nebraska.

# EXHIBIT A

Construction Lien, recorded September 25, 1989, Instrument No.
89-27590, Records of Lancaster County, Nebraska, between Signs
Incorporated, A Nebraska Corporation, claimant against CP Shopping
Center, Inc. for signs and graphics in the amount of $6,250.53.

Notice of Possible Unpaid Weed Assessment, dated June 8, 1993,
recorded June 9, 1993, Instrument No. 93-23958, Records of
Lancaster County, Nebraska, wherein states on May 31, 1993 the
Lancaster County Noxious weed Control Authority entered upon
subject property for the purpose of cutting and/or removing weeds.
Cost of said measure was $207.10.

Leasehold Deed of Trust and Assignment of Rents executed by Lincoln
Cell Tel Co., to William Olson, Attorney-at-Law, Trustee, and the
Beneficiary is Northern Telecom Finance Corporation, dated October
28, 1993, recorded October 28, 1993, Instrument No. 93-49216,
Records of Lancaster County, Nebraska. No Amount.

Memorandum of Lease executed by Kroh Brothers Development Company,
a Missouri Corporation, Landlord, to T.J. Maxx, Inc., a
Massachusetts Corporation, Tenant, dated October 24, 1986, recorded
January 26, 1987, Instrument No. 87-2365, Records of Lancaster
County, Nebraska. For 10 years with option to renew.

Recognition and Attornment Agreement, dated February 20, 1987,
recorded May 11, 1987, Instrument No. 87-15665, Records of
Lancaster County, Nebraska, from T.J. Maxx, Inc., to Metro North
State Bank, agreeing that if a default in the Deed of Trust at
Instrument No. 86-2365 occurs, the lease and the right of the
tenant thereunder shall continue in full force and effect and shall
not be terminated and disturbed, unless in accordance with the
provisions of said lease.

~~Plaza Sixty, Inc., a Wisconsin Corporation involuntary dissolution
of Corporation due to non payment of assumption tax on
corporations.~~

Restrictions, dated April 2, 1963, recorded April 3, 1963, Book
662, Page 679, Deed Records, Lancaster County, Nebraska, contained
in a Warranty Deed, wherein contains certain conditions and
restrictions on subject property.

Easement Deed, dated October 12, 1965, recorded October 14, 1965,
Book 102, Page 525, Deed Records, Lancaster County, Nebraska,
wherein grants to The Lincoln Telephone and Telegraph Company, its
successors and assigns for the constructing, operating, repairing,
maintaining, replacing and removing a communication system and
other related facilities upon, across, over and under a 10 foot
wide strip of land, being 5 feet each side of the center line as
described therein.

Easement, dated May 3, 1926, recorded January 14, 1927, Book 267,
Page 347, Deed Records, Lancaster County, Nebraska, contained in a
Warranty Deed, wherein grants Sanitary and Improvement District No.
1 of Lancaster County, Nebraska to construct a public sewer in,
upon and across the area described therein.  Assignment, dated
September 1, 1962, recorded November 1, 1967, Book 110, Page 343,
Miscellaneous Records of Lancaster County, Nebraska, to City of
Lincoln, Nebraska.

**EXHIBIT A**

Subdivision Permit No. 2455, recorded January 29, 1986, Instrument No. 86-2374, Records of Lancaster County, Nebraska, wherein contains certain conditions and restrictions on subject property.

Utility Easement, dated January 28, 1986, recorded January 29, 1986, Instrument No. 86-2375, Records of Lancaster County, Nebraska, granted to the City of Lincoln, Nebraska, The Lincoln Telephone and Telegraph Company, TV Transmission, Inc. and Minnegasco, their successors and assigns, for the construction, reconstruction, replacement, repair, operation and maintenance of utilities and all appurtenances thereto, over, under and above the area described therein.

Easement Agreement, dated January 28, 1986, recorded January 29, 1986, Instrument No. 86-2384, Records of Lancaster County, Nebraska, between Kroh Brothers Development Company; Life Investors Insurance Company of America, Inc.; and Blue Whale Company, wherein creates common areas and provides for the maintenance thereof as described therein.

Easement, dated April 22, 1986, recorded May 30, 1986, Instrument No. 86-15757, Records of Lancaster County, Nebraska, granted unto the City of Lincoln, its successors and assigns, to construct, reconstruct, maintain, operate and replace a storm sewer and appurtenances thereto, over and through the area described therein.

Easement, dated April 22, 1986, recorded May 30, 1986, Instrument No. 86-15758, Records of Lancaster County, Nebraska, granted unto the City of Lincoln, Nebraska, its successors and assigns, to construct, reconstruct, maintain, operate and replace a storm sewer and appurtenances thereto, over and through the area described therein.

Easement, dated April 22, 1986, recorded May 30, 1986, Instrument No. 86-15759, Records of Lancaster County, Nebraska, granted unto the City of Lincoln, Nebraska, its successors and assigns, to construct, reconstruct, maintain, operate and replace a storm sewer and appurtenances thereto, over and through the area described.

Easement, dated April 22, 1986, recorded May 30, 1986, Instrument No. 86-15760, Records of Lancaster County, Nebraska, granted unto the City of Lincoln, Nebraska, its successors and assigns, to construct, reconstruct, maintain, operate and replace a sanitary sewer and appurtenances thereto, over and through the area described.

Subdivision Permit No. 2495, recorded August 20, 1986, Instrument 86-28042, Records of Lancaster County, Nebraska, wherein contains certain conditions and restrictions on subject property.

Restrictions, dated April 2, 1963, recorded April 3, 1963, Book 662, Page 679, Deed Records, Lancaster County, Nebraska, contained in a Warranty Deed, wherein contains certain conditions and restrictions on subject property.

# EXHIBIT A

UCC #462925 executed by Plaza Sixty, Inc., Debtor, to Metro North State Bank, Secured Party, filed September 22, 1989, In the Office of the Secretary of State, State of Nebraska. For: Equipment, fixtures, other products & proceeds. With Assignment to Merchants Bank of Kansas City, Missouri at UCC #566060, filed October 23, 1992.

This Search does not certify to any lien of Personal Property Taxes.

Subject property does not lie within the 100 year flood plain as defined by the Corps of engineers.

We have examined the records in the Clerk of the County court and the Clerk of the District court of Lancaster County, Nebraska and the Clerk of the United States District court for the District of Nebraska, Omaha Division and find no unsatisfied judgments, suits pending, federal tax liens or bankruptcy proceedings filed or recorded and indexed in said office, involving any of the following named persons, that in any manner affect the title to or operate as liens upon the above described property:

Plaza Sixty, Inc., a Wisconsin Corporation..At Date Hereof

TAXES:   ALT KEY NO. 1454735
         1993 County Taxes $158,708.84 - UNPAID

SPECIAL ASSESSMENTS:  Ice and Snow Removal, District No. 1993, Levied June 28, 1993 - Total Amount Due - $460.95 - Due in 1 Installment - 0 PAID.
Weed Removal, District No. 1220, Levied December 28, 1993 - Total Amount Due - $207.10 - Due in 1 Installment - 0 PAID.

NOTE:  All special assessments are liens from the date of levy, but are not shown until properly indexed and of record in the office of the County Treasurer.

WITNESS OUR HAND this 27th day of April, 1994 at 8:00am.

                                          Abstracter:

                                          By _Boniface R. Williams_
                                          Registered Abstracter
                                          Dakota Title and Escrow Co.

## EXHIBIT D

**Store Floor Plans, Construction Plans and Specifications
and
Storefront, Signage and Pylon Sign**

[SEE ATTACHED]

24

# Statement

Lincoln Investors, LLC
1818 N. Farwell Ave
Milwaukee, WI 53202

| Date |
|---|
| 4/1/2014 |

| To: |
|---|
| Best Buy Stores, L.P.<br>Attn: Tricia Remus<br>7601 Penn Avenue South<br>Richfield, MN 55423-3645 |

| Amount Due | Amount Enc. |
|---|---|
| $700,027.04 | |

| Date | Transaction | Amount | Balance |
|---|---|---|---|
| 12/31/2013 | Balance forward | | 0.00 |
| 01/01/2014 | INV #473. Due 01/01/2014.<br>— CAM Charges $3,832.00<br>— Passthru Insurance $806.00<br>— Rent $57,416.70 | 62,054.70 | 62,054.70 |
| 01/06/2014 | PMT | -62,054.70 | 0.00 |
| 01/16/2014 | INV #507. Due 01/16/2014.<br>— Passthru Insurance, 1 @ $3,438.65 = 3,438.65 | 3,438.65 | 3,438.65 |
| 01/20/2014 | INV #485. Due 01/20/2014.<br>— Passthru Property Tax, 1 @ $35,970.56 = 35,970.56 | 35,970.56 | 39,409.21 |
| 01/27/2014 | PMT | -3,438.65 | 35,970.56 |
| 02/01/2014 | INV #506. Due 02/01/2014.<br>— Rent $86,125.05 | 86,125.05 | 122,095.61 |
| 02/10/2014 | INV #508. Due 02/07/2014.<br>— CAM Charges, 1 @ $5,937.34 = 5,937.34 | 5,937.34 | 128,032.95 |
| 03/01/2014 | INV #528. Due 03/01/2014.<br>— Rent $86,125.05 | 86,125.05 | 214,158.00 |
| 03/31/2014 | INV #486. Due 03/31/2014.<br>— Passthru Property Tax, 1 @ $35,970.55 = 35,970.55 | 35,970.55 | 250,128.55 |
| 04/01/2014 | INV #539. Due 04/01/2014.<br>— Rent $86,125.05 | 86,125.05 | 336,253.60 |
| 04/01/2014 | INV #540. Due 04/01/2014.<br>— Passthru Property Tax, 1 @ $23,980.37 = 23,980.37 | 23,980.37 | 360,233.97 |
| 04/01/2014 | INV #541. Due 04/01/2014.<br>— CAM Charges, 1 @ $7,070.11 = 7,070.11 | 7,070.11 | 367,304.08 |
| 04/01/2014 | INV #542. Due 04/01/2014.<br>— Passthru Insurance, 1 @ $3,236.80 = 3,236.80 | 3,236.80 | 370,540.88 |
| 04/01/2014 | INV #543. Due 04/01/2014.<br>— Electric, 1 @ $3,627.81 = 3,627.81 | 3,627.81 | 374,168.69 |
| 04/01/2014 | INV #544. Due 03/01/2014.<br>— Gas Usage, 1 @ $11,574.05 = 11,574.05 | 11,574.05 | 385,742.74 |
| 04/01/2014 | INV #545. Due 03/01/2014.<br>— Restoration, 1 @ $314,284.30 = 314,284.30 | 314,284.30 | 700,027.04 |

| CURRENT | 1-30 DAYS PAST DUE | 31-60 DAYS PAST DUE | 61-90 DAYS PAST DUE | OVER 90 DAYS PAST DUE | Amount Due |
|---|---|---|---|---|---|
| 124,040.14 | 35,970.55 | 504,045.79 | 35,970.56 | 0.00 | $700,027.04 |

EXHIBIT
2

**EXHIBIT A**

**Lincoln Investors, LLC**

**Invoice**

1818 N. Farwell Ave
Milwaukee, WI 53202

| Date | Invoice # |
|------|-----------|
| 1/20/2014 | 485 |

| Bill To |
|---------|
| Best Buy Stores, L.P.<br>Attn: Tricia Remus<br>7601 Penn Avenue South<br>Richfield, MN  55423-3645 |

| Ship To |
|---------|
|  |

| P.O. Number | Terms | Rep | Ship | Via | F.O.B. | Project |
|-------------|-------|-----|------|-----|--------|---------|
|  |  |  | 1/20/2014 |  |  |  |

| Quantity | Item Code | Description | Price Each | Amount |
|----------|-----------|-------------|------------|--------|
| 1 | Passthru Property ... | 2013 Real Estate Tax Reconciliation - 1st Half | 35,970.56 | 35,970.56 |

| | Total | $35,970.56 |
|---|-------|------------|

**EXHIBIT A**

Lincoln Investors, LLC

1818 N. Farwell Ave
Milwaukee, WI 53202

# Invoice

| Date | Invoice # |
|------|-----------|
| 2/1/2014 | 506 |

| Bill To |
|---------|
| Best Buy Stores, L.P.<br>Attn: Tricia Renns<br>7601 Penn Avenue South<br>Richfield, MN 55423-3645 |

| | Due Date |
|---|----------|
| | 2/1/2014 |

| Item | Description | Amount |
|------|-------------|--------|
| Rent | HOLDOVER TENANT MONTHLY RENT CHARGE | 86,125.05 |

| | Total | $86,125.05 |
|---|-------|-----------|
| | | $86,125.05 |

| Balance Due |
|-------------|

**EXHIBIT A**

**Lincoln Investors, LLC**

**1818 N. Farwell Ave**
**Milwaukee, WI 53202**

# Invoice

| Date | Invoice # |
|------|-----------|
| 3/1/2014 | 528 |

| Bill To |
|---------|
| Best Buy Stores, L.P.<br>Attn: Tricia Remus<br>7601 Penn Avenue South<br>Richfield, MN  55423-3645 |

| | Due Date |
|--|----------|
| | 3/1/2014 |

| Item | Description | Amount |
|------|-------------|--------|
| Rent | HOLDOVER TENANT MONTHLY RENT CHARGE | 86,125.05 |
| | **Total** | $86,125.05 |
| | | $86,125.05 |

**Balance Due**

EXHIBIT A

**Lincoln Investors, LLC**

1818 N. Farwell Ave
Milwaukee, WI 53202

# Invoice

| Date | Invoice # |
|------|-----------|
| 3/31/2014 | 486 |

**Bill To**

Best Buy Stores, L.P.
Attn: Tricia Remus
7601 Penn Avenue South
Richfield, MN  55423-3645

**Ship To**

| P.O. Number | Terms | Rep | Ship | Via | F.O.B. | Project |
|-------------|-------|-----|------|-----|--------|---------|
| | | | 3/31/2014 | | | |

| Quantity | Item Code | Description | Price Each | Amount |
|----------|-----------|-------------|------------|--------|
| 1 | Passthru Property ... | 2013 Real Estate Tax Reconciliation - 2nd Half | 35,970.55 | 35,970.55 |

| | **Total** | **$35,970.55** |
|--|-----------|----------------|

**EXHIBIT A**

Lincoln Investors, LLC

1818 N. Farwell Ave
Milwaukee, WI 53202

# Invoice

| Date | Invoice # |
|------|-----------|
| 4/1/2014 | 539 |

| Bill To |
|---------|
| Best Buy Stores, L.P.<br>Attn: Tricia Remus<br>7601 Penn Avenue South<br>Richfield, MN 55423-3645 |

| Due Date |
|----------|
| 4/1/2014 |

| Item | Description | Amount |
|------|-------------|--------|
| Rent | HOLDOVER TENANT MONTHLY RENT CHARGE | 86,125.05 |
| | **Total** | **$86,125.05** |

$86,125.05

**Balance Due**

**EXHIBIT A**

**Lincoln Investors, LLC**

# Invoice

1818 N. Farwell Ave
Milwaukee, WI 53202

| Date | Invoice # |
|------|-----------|
| 2/10/2014 | 508 |

| Bill To |
|---------|
| Best Buy Stores, L.P.<br>Attn: Tricia Remus<br>7601 Penn Avenue South<br>Richfield, MN  55423-3645 |

| Ship To |
|---------|
| |

| P.O. Number | Terms | Rep | Ship | Via | F.O.B. | Project |
|-------------|-------|-----|------|-----|--------|---------|
| | | | 2/7/2014 | | | |

| Quantity | Item Code | Description | Price Each | Amount |
|----------|-----------|-------------|------------|--------|
| 1 | CAM Charges | 2013 CAM Reconciliation | 5,937.34 | 5,937.34 |
| | | | | |

| | Total | $5,937.34 |
|--|-------|-----------|

**EXHIBIT A**

**Lincoln Investors, LLC**

1818 N. Farwell Ave
Milwaukee, WI 53202

# Invoice

| Date | Invoice # |
|---|---|
| 4/1/2014 | 541 |

| Bill To |
|---|
| Best Buy Stores, L.P.<br>Attn: Tricia Remus<br>7601 Penn Avenue South<br>Richfield, MN 55423-3645 |

| Ship To |
|---|
|  |

| P.O. Number | Terms | Rep | Ship | Via | F.O.B. | Project |
|---|---|---|---|---|---|---|
|  |  |  | 4/1/2014 |  |  |  |

| Quantity | Item Code | Description | Price Each | Amount |
|---|---|---|---|---|
| 1 | CAM Charges | 2014 CAM Charges (Jan - Apr) | 7,070.11 | 7,070.11 |

| | Total | $7,070.11 |
|---|---|---|

**EXHIBIT A**

**Lincoln Investors, LLC**

**Invoice**

1818 N. Farwell Ave
Milwaukee, WI 53202

| Date | Invoice # |
|------|-----------|
| 4/1/2014 | 540 |

**Bill To**

Best Buy Stores, L.P.
Attn: Tricia Remus
7601 Penn Avenue South
Richfield, MN  55423-3645

**Ship To**

| P.O. Number | Terms | Rep | Ship | Via | F.O.B. | Project |
|-------------|-------|-----|------|-----|--------|---------|
| | | | 4/1/2014 | | | |

| Quantity | Item Code | Description | Price Each | Amount |
|----------|-----------|-------------|------------|--------|
| 1 | Passthru Property ... | 2014 Real Estate Taxes (Jan-Apr) | 23,980.37 | 23,980.37 |

| | **Total** | **$23,980.37** |
|---|---|---|

EXHIBIT A

**Lincoln Investors, LLC**

1818 N. Farwell Ave
Milwaukee, WI 53202

# Invoice

| Date | Invoice # |
|------|-----------|
| 4/1/2014 | 542 |

| Bill To |
|---------|
| Best Buy Stores, L.P.<br>Attn: Tricia Remus<br>7601 Penn Avenue South<br>Richfield, MN 55423-3645 |

| Ship To |
|---------|
|  |

| P.O. Number | Terms | Rep | Ship | Via | F.O.B. | Project |
|-------------|-------|-----|------|-----|--------|---------|
|  |  |  | 4/1/2014 |  |  |  |

| Quantity | Item Code | Description | Price Each | Amount |
|----------|-----------|-------------|------------|--------|
| 1 | Passthru Insurance | 2014 Insurance Reconciliation (Feb - April) | 3,236.80 | 3,236.80 |

| | Total | $3,236.80 |

**EXHIBIT A**

Lincoln Investors, LLC

1818 N. Farwell Ave
Milwaukee, WI 53202

# Invoice

| Date | Invoice # |
|------|-----------|
| 4/1/2014 | 543 |

| Bill To |
|---------|
| Best Buy Stores, L.P.<br>Attn: Tricia Remus<br>7601 Penn Avenue South<br>Richfield, MN 55423-3645 |

| Ship To |
|---------|
|  |

| P.O. Number | Terms | Rep | Ship | Via | F.O.B. | Project |
|-------------|-------|-----|------|-----|--------|---------|
|  |  |  | 4/1/2014 |  |  |  |

| Quantity | Item Code | Description | Price Each | Amount |
|----------|-----------|-------------|------------|--------|
| 1 | Electric | Electric Charges(02/01/2014 - 04/30/2014) | 3,627.81 | 3,627.81 |

| | Total | $3,627.81 |
|-|-------|-----------|

**EXHIBIT A**

**Lincoln Investors, LLC**

**Invoice**

1818 N. Farwell Ave
Milwaukee, WI 53202

| Date | Invoice # |
|---|---|
| 4/1/2014 | 544 |

| Bill To | Ship To |
|---|---|
| Best Buy Stores, L.P.<br>Attn: Tricia Remus<br>7601 Penn Avenue South<br>Richfield, MN  55423-3645 | |

| P.O. Number | Terms | Rep | Ship | Via | F.O.B. | Project |
|---|---|---|---|---|---|---|
| | | | 3/1/2014 | | | |

| Quantity | Item Code | Description | Price Each | Amount |
|---|---|---|---|---|
| 1 | Gas Usage | Gas Usage (Feb - Apr) | 11,574.05 | 11,574.05 |

| | Total | $11,574.05 |
|---|---|---|

**EXHIBIT A**

Lincoln Investors, LLC

# Invoice

1818 N. Farwell Ave
Milwaukee, WI 53202

| Date | Invoice # |
|------|-----------|
| 4/1/2014 | 545 |

| Bill To | Ship To |
|---------|---------|
| Best Buy Stores, L.P.<br>Attn: Tricia Remus<br>7601 Penn Avenue South<br>Richfield, MN 55423-3645 | |

| P.O. Number | Terms | Rep | Ship | Via | F.O.B. | Project |
|-------------|-------|-----|------|-----|--------|---------|
| | | | 3/1/2014 | | | |

| Quantity | Item Code | Description | Price Each | Amount |
|----------|-----------|-------------|------------|--------|
| 1 | Repairs | Repairs and Replacements | 314,284.30 | 314,284.30 |

| | Total | $314,284.30 |
|--|-------|-------------|

**EXHIBIT A**

## IN THE DISTRICT COURT OF LANCASTER COUNTY, NEBRASKA

| | | |
|---|---|---|
| LINCOLN INVESTORS, a Limited, Liability Company. | ) ) ) | Case No. CI14-1663 |
| Plaintiff, | ) ) | |
| v. | ) ) | **ALIAS PRAECIPE** |
| BEST BUY STORES, L.P., a Virginia Limited Partnership, AND BEST BUY CO., INC., a Minnesota Corporation, | ) ) ) ) | |
| Defendants. | ) ) ) | |

TO THE CLERK OF SAID COURT:   Please issue summons for certified mail upon the Defendant, as follows:

> Best Buy Co., Inc.
> Registered Agent: CT Corporation System Inc.
> 100 S, 5th Street #1075
> Minneapolis, MN 55402

Linda M. Jewson #22910

Prepared and submitted by:
James A. Cada #10553
Edward F. Hoffman #21397
Linda M. Jewson #22910
Cada, Cada, Hoffman & Jewson
1024 K Street
Lincoln, NE 68508
(402) 477-2233

LANCASTER COUNTY
2014 MAY 19 PM 2 40
CLERK OF THE
DISTRICT COURT



001401291D02

Image ID:
D00428299D02

**EXHIBIT A**
**SUMMONS**

Doc. No.    428299

IN THE DISTRICT COURT OF LANCASTER COUNTY, NEBRASKA
575 S. 10th Street - 3rd Floor
SEPARATE JUVENILE COURT-4th Floor
Lincoln            NE 68508

Lincoln Investers v. Best Buy Stores L P

Case ID: CI 14    1663

TO:  Best Buy Co Inc

**FILED BY**

Clerk of the Lancaster District Court
**05/14/2014**

You have been sued by the following plaintiff(s):

    Lincoln Investers

Plaintiff's Attorney:    James A Cada
Address:                 1024 K St
                         Lincoln, NE 68508-3909

Telephone:               (402) 477-2233

A copy of the complaint/petition is attached. To defend this lawsuit, an
appropriate response must be served on the parties and filed with the office of
the clerk of the court within 30 days of service of the complaint/petition. If
you fail to respond, the court may enter judgment for the relief demanded in the
complaint/petition.

Date: MAY 14, 2014       BY THE COURT:  _Troy L Hawk_
                                              Clerk

PLAINTIFF'S DIRECTIONS FOR SERVICE OF SUMMONS AND A COPY OF THE
COMPLAINT/PETITION ON:

        Best Buy Co Inc
        CT Corporation System Inc
        100 South 5th Street #1075
        Minneapolis, MN 55402

BY:  Greiner Process Service
Method of service:  Personal or Residential Service

You are directed to make such service within twenty days after date of issue,
and show proof of service as provided by law.

Image ID:
D00428942D02

**EXHIBIT A**
**SUMMONS**

Doc. No.    428942

IN THE DISTRICT COURT OF LANCASTER COUNTY, NEBRASKA
575 S. 10th Street - 3rd Floor
SEPARATE JUVENILE COURT-4th Floor
Lincoln            NE 68508

Lincoln Investors v. Best Buy Stores L P

Case ID: CI 14    1663

TO:  Best Buy Co Inc

**FILED BY**

Clerk of the Lancaster District Court
**05/22/2014**

You have been sued by the following plaintiff(s):

    Lincoln Investors

Plaintiff's Attorney:    James A Cada
Address:                 1024 K St
                         Lincoln, NE 68508-3909

Telephone:               (402) 477-2233

A copy of the complaint/petition is attached. To defend this lawsuit, an
appropriate response must be served on the parties and filed with the office of
the clerk of the court within 30 days of service of the complaint/petition. If
you fail to respond, the court may enter judgment for the relief demanded in the
complaint/petition.

Date: MAY 22, 2014        BY THE COURT:   _Troy L Hawk_
                                          Clerk

PLAINTIFF'S DIRECTIONS FOR SERVICE OF SUMMONS AND A COPY OF THE
COMPLAINT/PETITION ON:

        Best Buy Co Inc
        CT Corporation System Inc,Reg.Agt.
        100 South 5th Street #1075
        Minneapolis, MN 55402

Method of service:  Certified Mail

You are directed to make such service within ten days after the date of issue,
and file with the court clerk proof of service within ten days after the signed
receipt is received or is available electronically, whichever occurs first.

Image ID:
D00428298D02

**EXHIBIT A**
**SUMMONS**

Doc. No.   428298

IN THE DISTRICT COURT OF LANCASTER COUNTY, NEBRASKA
575 S. 10th Street - 3rd Floor
SEPARATE JUVENILE COURT-4th Floor
Lincoln            NE 68508

Lincoln Investers v. Best Buy Stores L P

Case ID: CI 14    1663

TO:  Best Buy Stores L P

**FILED BY**

Clerk of the Lancaster District Court
**05/14/2014**

You have been sued by the following plaintiff(s):

    Lincoln Investers

Plaintiff's Attorney:    James A Cada
Address:                 1024 K St
                         Lincoln, NE 68508-3909

Telephone:               (402) 477-2233

A copy of the complaint/petition is attached. To defend this lawsuit, an
appropriate response must be served on the parties and filed with the office of
the clerk of the court within 30 days of service of the complaint/petition. If
you fail to respond, the court may enter judgment for the relief demanded in the
complaint/petition.

Date: MAY 14, 2014        BY THE COURT:                            Clerk

PLAINTIFF'S DIRECTIONS FOR SERVICE OF SUMMONS AND A COPY OF THE
COMPLAINT/PETITION ON:

        Best Buy Stores L P
        CT Corporation Sytem Inc
        5601 South 59th Street
        Lincoln, NE 68516

BY:  Greiner Process Service
Method of service:  Personal or Residential Service

You are directed to make such service within twenty days after date of issue,
and show proof of service as provided by law.

Image ID:
D00428703D02

**EXHIBIT A**
**SUMMONS**

Doc. No.   428703

IN THE DISTRICT COURT OF LANCASTER COUNTY, NEBRASKA
575 S. 10th Street - 3rd Floor
SEPARATE JUVENILE COURT-4th Floor
Lincoln                NE 68508

Lincoln Investers v. Best Buy Stores L P

Case ID: CI 14      1663

TO:  Best Buy Stores L P

**FILED BY**

Clerk of the Lancaster District Court
05/20/2014

You have been sued by the following plaintiff(s):

Lincoln Investers

Plaintiff's Attorney:    James A Cada
Address:                 1024 K St
                         Lincoln, NE 68508-3909

Telephone:               (402) 477-2233

A copy of the complaint/petition is attached. To defend this lawsuit, an
appropriate response must be served on the parties and filed with the office of
the clerk of the court within 30 days of service of the complaint/petition. If
you fail to respond, the court may enter judgment for the relief demanded in the
complaint/petition.

Date: MAY 20, 2014      BY THE COURT:        _Troy L Hawk_
                                                Clerk

PLAINTIFF'S DIRECTIONS FOR SERVICE OF SUMMONS AND A COPY OF THE
COMPLAINT/PETITION ON:

         Best Buy Stores L P
         Registered Agent CT Corp.System
         100 S.5th St., #1075
         Minneapolis, MN 55402

Method of service:  Certified Mail
Special Instructions:
Alias Summons

You are directed to make such service within ten days after the date of issue,
and file with the court clerk proof of service within ten days after the signed
receipt is received or is available electronically, whichever occurs first.

**EXHIBIT A**

| Image ID: D00429080D02 | SERVICE RETURN | Doc No.    428298 |
|---|---|---|

Return to:      LANCASTER DISTRICT COURT
Case ID: CI 14    1663
Lincoln Investors v. Best Buy Stores L P


Received Doc.No.   428298 a Summons _____
   on  5/22/2014 at 04:00 PM.


I hereby certify that on  5/23/2014 at 10:45 AM I served Doc. No.   428298 a
Summons                    on Best Buy Stores L P _____
by Personal Service      to Kendra Ingersoll (Reg Agent) _____
at 5601 SO. 59th Street _____
as required by Nebraska state law.

                                          **FILED BY**
                                   Clerk of the Lancaster District Court
                                          **05/27/2014**


Service and return     $15.00
Mileage                 $2.50
TOTAL                  $17.50

Comments


Date:  5/27/2014 Greiner Process Service        /S/ Brad Greiner _____

       Requested by
       James A Cada
       1024 K St
       Lincoln          NE 68508 3909

**EXHIBIT A**

IN THE DISTRICT COURT OF LANCASTER COUNTY, NEBRASKA

| | | |
|---|---|---|
| LINCOLN INVESTORS, a Limited, Liability Company, | ) ) ) | Case No. CI14-1663 |
|     Plaintiff, | ) ) | |
| v. | ) ) ) | CERTIFIED MAIL |
| | ) | PROOF OF SERVICE |
| BEST BUY STORES, L.P., a Virginia Limited Partnership, AND BEST BUY CO., INC., a Minnesota Corporation, | ) ) ) | |
|     Defendants. | ) ) | |

Copies of the Summons were mailed by certified mail.
TO THE DEFENDANT:    Best Buy Co., Inc.
At the following address:   CT Corporation System, Inc.
                          100 South 5th Street #1075
                          Minneapolis, MN 55402
on the 23rd day of May, 2014, as required by law.
Postage:  $9.29

DATED this _3_ day of June, 2014.

                        Lincoln Investors, Inc., Plaintiff

                        By: _____
                             James A. Cada #10553
                             1024 K Street
                             Lincoln, NE 68508
                             (402) 477-2233

The return receipt for mailing to Defendant was delivered on May 27, 2014.

*(stamp, right margin:)* LANCASTER COUNTY CLERK OF THE DISTRICT COURT 2014 JUN 3 PM 3 09



001399857D02



**EXHIBIT A**

## U.S. Postal Service™
## CERTIFIED MAIL™ RECEIPT
(Domestic Mail Only; No Insurance Coverage Provided)

For delivery information visit our website at www.usps.com®

OFFICIAL USE

| | |
|---|---|
| Postage | $ 3.29 |
| Certified Fee | 3.30 |
| Return Receipt Fee (Endorsement Required) | .370 |
| Restricted Delivery Fee (Endorsement Required) | |
| Total Postage & Fees | $ 9.29 |

Postmark Here

Sent To: Best Buy Co Inc
Street, Apt. No.; or PO Box No. 100 South 5th St #1075
City, State, ZIP+4 Minneapolis MN 55403

7014 0150 0000 2123 0932

---

**SENDER: COMPLETE THIS SECTION**

- Complete items 1, 2, and 3. Also complete item 4 if Restricted Delivery is desired.
- Print your name and address on the reverse so that we can return the card to you.
- Attach this card to the back of the mailpiece, or on the front if space permits.

1. Article Addressed to:

Best Buy Co Inc
CT Corporation System Inc,
Reg Agent
100 South 5th St #1075
Minneapolis MN 55403

**COMPLETE THIS SECTION ON DELIVERY**

A. Signature
X ☐ Agent ☐ Addressee

B. Received by (Printed Name)   C. Date of Delivery 5-27

D. Is delivery address different from item 1? ☐ Yes
If YES, enter delivery address below: ☐ No

CT, a Wolter Kluwer business
100 Fifth Street Towers
Suite 1075
Minneapolis, MN 55402

3. Service Type
☑ Certified Mail  ☐ Express Mail
☐ Registered  ☑ Return Receipt for Merchandise
☐ Insured Mail  ☐ C.O.D.

4. Restricted Delivery? (Extra Fee) ☐ Yes

2. Article Number (Transfer from service label): 7014 0150 0000 2123 0932

PS Form 3811, February 2004    Domestic Return Receipt    102595-02-M-1540